## THE PEOPLE *vs.* GRIFFIN.

Where threatening letters are written, and mailed, in one county, and directed to and received by, the person to whom they are addressed, in another county, the indictment for sending such letters should be found in the latter county.

After an issue has been joined, upon an indictment, on a plea of not guilty, and a petit jury has been impannelled, and the case on the part of the people has been gone through with, it is too late for the defendant to raise the objection of informality in the organization of the grand jury.

The statute against sending threatening letters, with the view of extorting money, &c. was intended to embrace only cases where the intent is to obtain that which, in justice and equity, the writer of the letter is not entitled to receive. It does not extend to cases where the person threatened actually owes the writer of the letter the sum claimed by him.

To support an indictment under that statute, the end, as well as the means employed to obtain it, must be wrongful and unlawful.

THE defendant was indicted and convicted in the court of sessions of Livingston county, upon an indictment charging him with having written letters to Stephen Heath, threatening to burn and destroy his property unless he would send the defendant, within a certain time, the sum of $16, claimed by the defendant to be due from Heath. On the trial, the public prosecutor gave evidence tending to prove that the letters in question were written by the defendant. Evidence was also introduced on which the defendant relied, to show that Heath was

indebted to him in the amount claimed in the letters. It was conceded by the district attorney that the letters in question were written in the county of Steuben, and mailed at Corning in that county, directed to said Heath at Geneseo in Livingston county; and it was proved that they were received by Heath from the post office at the latter place. The defendant's counsel moved that he be discharged, on the ground that no offence was proved to have been committed in the county of Livingston. That if any had been committed, it was in the county of Steuben. The motion was denied by the court, and the defendant's counsel excepted.

The defendant's counsel then offered to prove that the county judge was not present in court when the clerk administered the oath to the grand jury who found the bill of indictment; and that to some of the grand jurors the required oath was not administered at all. The court refused to receive the evidence, and the defendant's counsel excepted. The defendant's counsel requested the court to charge the jury that it was not *extortion* or *gain* within the meaning of the statute, &c. to obtain, by threats, money that is justly due to the one who makes the threats. That if the jury were satisfied, from the evidence, that Heath was justly indebted to the defendant in the sum of $16, claimed by him, the defendant was not guilty of violating the statute, and should be acquitted. The court refused to charge the jury as requested, and charged them that if they believed the defendant sent the letters to Heath as charged, they should find him guilty; and that it was entirely immaterial whether Heath owed him the money claimed or not. The defendant's counsel excepted to the charge, and to the refusal to charge as requested. The jury found the defendant guilty. Sentence was suspended; and the record and bill of exceptions having been brought into this court by certiorari, the defendant, by his counsel, moved that the conviction be reversed, and for a new trial.

*James Wood, Jun.* for the defendant.

*George Hastings,* for the people.

*By the Court,* WELLES, J.   I think the court below decided correctly in refusing to discharge the defendant on the first ground taken by his counsel.   Although the letters were written and mailed in Steuben county, yet as they were directed to, and received in, Livingston county by the person to whom they were addressed, the indictment was properly found in the latter county.

The court also properly refused to allow the defendant to prove the informality complained of in the organization of the grand jury.   An issue upon the plea of not guilty had been regularly joined, and that was the issue which was being tried, and upon that a petit jury had been empannelled and the case on the part of the people had been gone through with.   The objection was clearly too late, and it would have been unprecedented to allow this collateral issue to be raised at so late a period.

The only remaining question to be considered is upon that part of the charge in which the jury were instructed that it was entirely immaterial whether Heath, the individual to whom the alleged threatening letters were written, owed the defendant the $16, claimed, or not.   It is a question, I believe, of entirely new impression, and is not without its difficulties.   The section of the statute under which the defendant was indicted and convicted, (2 *R. S.* 678, § 59,) is in the following words : " Every person who shall knowingly send or deliver, or shall make, and for the purpose of being delivered or sent, shall part with the possession of, any letter or writing, with or without a name subscribed thereto, or signed with a fictitious name, or with any letter, mark or other designation, threatening therein to accuse any person of any crime, or to do any injury to the person or property of any one, with a view or intent to extort or gain any money or property of any description, belonging to another, shall, upon conviction, be adjudged guilty of an attempt to rob, and shall be punished by imprisonment in a state's prison not exceeding five years." In order to constitute the offence created by this statute, the letters must be sent, &c. *with a view or intent to extort or gain money or property, &c. belonging to another.*   The intent

The People *v.* Griffin.

must be to *extort* or *gain*. Can it be truly said that a person extorts money which is justly his due ? The word *gain*, in the connection here used, I regard as synonymous with *extort :* at least I think it must mean something more than merely to obtain, or get possession of. If that was all the legislature intended by it, it seems to me they would have employed different language. In view of the well established rule, that penal statutes are to receive a strict construction, I must interpret this as intending to embrace only cases where the intent is to obtain that which in justice and equity the party is not entitled to receive. The end, as well as the means employed to obtain it, must be wrongful and unlawful. The act forbidden and made thus highly penal, is declared by the statute, *an attempt to rob ;* and the statute itself is found in the article entitled " Of *robbery, embezzlement* and *larceny.*" If A. meets B. on the highway, and by threatening his life induces B., through fear, to surrender his watch or horse to A., this is robbery. If in the case supposed, B. defends himself or escapes and retains his property, A. is guilty of an attempt to rob. If, however, in either case, A. is able to satisfy the jury that he believed the property to be his, and that he was obtaining, or attempting to obtain, what he honestly supposed belonged to him, although in fact his claim was not legal, and the property really belonged to B., he should be acquitted. So in the case of larceny, if the defendant can show he took the goods alleged to be stolen, under a *bona fide* claim of right, the case becomes a mere trespass. In all these cases, the fraudulent intent is the essence of the offence.

I think it is of some consequence in this view of the subject, that the legislature have designated the name of the offence. It is declared *an attempt to rob.* Before the statute, the act of obtaining money or property without a color or claim of right, through the means of threatening letters, was not a subject of criminal cognizance ; and yet it is apparent that such acts were as dangerous, and accompanied with as much moral turpitude, as the crime of robbery. In declaring the act a crime, and providing for its punishment, the legislature have, with great propriety, placed the offence in the same class with that

The People v. Griffin.

of robbery; and in giving the statute an interpretation, I think we should apply the same rule in respect to the intent with which the act is committed, as we would in case of the common law offence of an intention to rob; in which the *lucri causa* must always characterize the act. A distinction has been attempted to be drawn between an intention to obtain the possession of a specific article of property and an intention to coerce the payment of a debt. And it is said that the laws have provided ample means for the collection of debts; that it would be dangerous to disregard the distinction, and would raise inconvenient and troublesome issues upon the trial. All this may be true, and yet I am unable to perceive why the argument would not apply with all its force, as well to one case as the other. The law has provided as ample civil remedies for recovering the possession of a specific chattel wrongfully taken or withheld from the party to whom it belongs, as it has for the recovery of damages in the case of a chose in action. But if it were otherwise, and we were at liberty to speculate upon the subject, I should incline to regard the distinction as too theoretical and fanciful to be entitled to much weight, in a case so grave in its consequences as this.

In the case of *The People* v. *Thomas*, (3 *Hill*, 169,) it was held that a false representation, tending merely to induce one to pay a debt previously due from him, is not within the statute against obtaining property by false pretences, though payment be thereby obtained. (*See also Rex* v. *Williams*, 7 *Car. & P.* 354; 32 *Eng. Com. Law Rep.* 550.) These cases are cited to show that the ultimate object or intent of the party accused must be unlawful, in order to constitute the offence under a statute, the object of which was to prevent and punish acts, somewhat in character with, and certainly not more criminal in their nature, than those punishable by the statute under consideration.

Conviction reversed, and new trial granted.

MAYNARD, J. dissenting.