## In re SHERIN.

Charges in disbarment proceedings must be established by clear
preponderance of the evidence.

While courts may allow disbarment proceedings to be brought,
based on charges of crimes not connected with accused's professional
duties or work, yet, in the absence of special circumstances, such
charges will not be considered in advance of final disposition of
criminal proceedings based on the same accusation.

Proceedings to disbar an attorney should not be instituted be-
cause of alleged acts of immorality unfitting the respondent to be a
member of the bar, committed in the past, where for many years
thereafter he lived an exemplary life.

Pen. Code, § 633, defines extortion as the obtaining of property
from another with his consent, induced by a wrongful use of force
or fear. Section 634 declares that fear such as will constitute ex-
tortion may be induced by a threat, either to accuse another of any
crime or to expose any secret affecting him, and section 638 de-
clares that every person who, with intent to extort any money or
property from another, sends any person any threatening letter shall

be punished as if the money or property were actually obtained by means of such threat. **Held,** that the word "wrongful," as used in section 633, relates solely to the method used; and a person may be guilty of extortion under such sections if he obtains money from another by unlawful means, though he does not seek to obtain any benefit for himself, and believes that the money or property obtained in fact belongs to the person for whom it is obtained; the term "extortion" being construed to mean "to obtain from a holder desired possessions or knowledge by force or compulsion; to wrest from another by force, menace, duress," etc.

Where an attorney for a deserted wife wrote letters to the husband implying that if he did not pay certain money and turn over certain property to the wife, and induce his paramour, with whom, it was claimed, he was living in another state in adultery, to secure the dismissal of certain civil proceedings on a note given by the husband to such paramour, criminal proceedings would be instituted against them, and they would be extradited and tried, such acts constituted extortion within Pen. Code, §§ 633, 634, 638, without reference to the justness of the wife's' claim or the attorney's intention, requiring the attorney's suspension from practice.

(Opinion filed, March 29, 1911.)

In the Matter of proceedings to disbar A. Sherin, an attorney. Suspended.

*W. A. Morris,* for the Court. *Sherin & Sherin* and *Lee Stover,* for respondent.

WHITING, J. This is an original proceeding brought in this court seeking to have this court strike from the roll of its bar the name of A. Sherin, respondent. The accusation filed herein charged the respondent with (1) prosecuting certain criminal cases and afterwards appearing for the defendants in the same cases; (2) being a person morally unfit to be a member of the bar of this court; (3) having been guilty of the crime of perjury; and (4) having been guilty of extortion when acting as a member of the bar of this court. The respondent answered the accusations herein, and a referee was appointed to try the issues and report the evidence, with his findings and conclusions thereon, to this court. The issues were tried before such referee, and he reported to this court the evidence offered and received before him, together with his findings and conclusions thereon, which findings and conclusions were all in favor of respondent. After

the filing of such report orders to show cause issued, requiring, upon the one hand, the prosecution to show why the report of the referee should not be in all things confirmed, and, upon the other hand, the respondent to show cause why such report should not be set aside and findings made and conclusions rendered against the respondent. A hearing was had upon such orders to show cause, and the matter is now before us for final determination.

It is claimed by the respondent, and conceded by the prosecution, that the rule laid down in Re Elliott, 18 S. D. 264, 100 N. W. 432, is the settled law as to the amount of evidence required to sustain the charges in disbarment proceedings, which rule is that the charges in such cases must be established by a clear, undoubted preponderance of the testimony. In the consideration of the evidence we have recognized and followed the above rule.

The referee finds, and it is unquestioned herein, that the respondent is now, and has been for some 26 years last past, a duly licensed and practicing attorney at law in the courts of this state, practicing first at Britton, and since April, 1899, at Watertown, and that the practice of law is his sole occupation and means of livelihood.

The referee finds the evidence insufficient to sustain the charge of aiding in the prosecution of criminal cases and afterwards appearing for the defendants therin, and the said referee was clearly right in such finding.

The charge of perjury related to a matter not connected with respondent's professional duties; it being charged that, when a witness upon the stand in a criminal cause on trial in one of the courts in this state, the respondent testified falsely to material matters involved in such cause. The evidence upon this charge is conflicting, and the referee was justified in finding with respondent thereon. In passing we wish to state that, while courts undoubtedly have the right to allow disbarment proceedings to be brought when based upon charges of crimes not connected with the accused's professional duties or work, yet such proceedings should be discouraged, and ordinarily the complainant should be

required to first submit the charges in a criminal proceeding. In the future, whenever it shall be brought to the attention of this court that charges preferred against an attorney in disbarment proceedings relate to an alleged crime not connected with his work as an attorney, this court, except where special circumstances may be shown justifying different action, will not consider such charges until after the matter has been disposed of under a proper criminal proceeding.

The charge of immorality unfitting the respondent to be a member of the bar was, in the original accusation, based upon several specifications. Prior to the commencement of the trial, the prosecution asked leave to amend the original accusations by adding thereto four other specifications setting forth acts of alleged immorality. One of these setting forth a matter of recent date was allowed, and evidence received in support thereof. The other three were refused by the referee, one of the grounds for such refusal being that the alleged misconduct occurred so long in the past that it should not be considered at this time; the other ground for excluding such matter we need not consider, as we believe the above-mentioned ground sufficient. While the charges made in these proposed specifications were, if true, sufficient to show that respondent was, at the time referred to, not only unfitted to be a member of an honorable profession, but absolutely unfitted for the society of respectable people, yet it is and should be the policy of the law to forgive one his errors long since past, and not to allow the same to be resurrected, where there is nothing to show but that for several years after such wrong-doing the party may have lived an exemplary life.

We come now to the remaining accusation, that the respondent, while acting as an attorney at law and a member of the bar of this court, had been guilty of the crime of extortion. The findings of the referee in relation to this charge are as follows, omitting from them the full name of the parties therein mentioned:

"(10) In regard to Specification E, being the charge of extortion, your referee finds that the said A. Sherin wrote and mailed the letters, copies of which are set out in complaint, to

Floyd L. C. at Great Falls, Mont., and Wallace, Idaho. That at the time the said letters were written the said Floyd L. C. had deserted his wife, Florence C., and his children, and was living at Great Falls, Mont., and Wallace, Idaho, and that his relations with one Rose S. were very intimate and apparently improper. That an action was begun by Mrs. C. against Rose S. for alienation of affection, and a judgment obtained against her on that ground. That Mrs. C. was living in Watertown, S. D., with her children and part of the time in Wisconsin. She had no money and property for her support. That Mr. Sherin was her attorney and started a divorce suit for her against her husband, which was dropped afterwards when her husband returned to her. That Mr. C. had given Rose S. a note and she had assigned it to her aunt, Mrs. S. Mrs. S. had sued on the note and attached the furniture and fixtures in the restaurant left by Mr. C. That Mrs. C. had made a claim for this property as her exemptions for herself and children. These letters were written by Mr. Sherin as the attorney for Mrs. C., at her request. They were answered by Mr. C. direct to his wife, except the one he wrote to Sherin, which is in evidence. The statements made in the letters are true. Mr. Sherin gained nothing personally by the writing of these letters, and he did not expect to. The bill of sale was delivered by Mr. C. to Mrs. C., but the release was not obtained from Mrs. S. There were sufficient grounds to believe that Mr. C. was living in open adultery with Rose S. at the time. The motive for writing the letters on the part of A. Sherin was good. Mr. C. afterwards returned to Watertown, S. D., and his family, and all suits were dismissed.

"(11) Your referee finds that the letters set out in the complaint were not sent with intent to extort any money or other property from Floyd C.".

The evidence submitted fully supports finding No. 10, and, as we view this matter, there is nothing before us but a question of law, because as it appears to us beyond all possible question of doubt, the referee was wrong in finding No. 11, as it fully and clearly appears that the respondent did write and send the letters in ques·

tion *with an intent then and there upon his part to obtain money and other property from the party to whom such letters were addressed and from the paramour of such party;* the only question being whether, under the undisputed facts, the obtaining of money through the means used would be extortion. It will be unnecessary to reproduce the letters in full, but the following parts of two of the letters show all that is material herein. We have omitted the surname of the parties mentioned in such letters:

"Office of A. Sherin, City Attorney, Watertown, S. D. Watertown, S. D., Aug. 28, 1907. Mr. Floyd L. C., Great Falls, Mont. Dear Sir: I inclose you some papers that we want you to sign and return here at once. I have been looking after the business for your wife since you left and we have known that Rose S. was with you for some time at Great Falls. We know just how you were living and all about it; we know you were about to leave Great Falls but until you settle things with your wife you can't leave. The officers there are instructed to arrest both of you, if either of you attempt to leave until we are ready. Not only did we get this information from officers and others there but Rose S. wrote your wife a letter a few weeks ago and told the whole story herself. She said you were passing her as your sister in law, but that you and she roomed together and worked together. She wrote the letter in an attempted disguised hand, but as we had other letters of hers the attempt to disguise was a bad one. We submitted the letters to experts and they are ready to swear she wrote the letters. I then sent the letters to Great Falls and had them investigated there, and had them returned with the information that she alone wrote the letter. It was evidently done with the purpose of making your wife mad, so she would get a divorce from you and she would have you. It was a bold move on her part and she must have thought your wife rather green. * * * What I want is this bill of sale from you, and then I want Rose S. to sign this other paper to drop these suits and let your wife have the property. If this is not done this whole business will be dragged into court and everything exposed, George. C. is the attorney for Mrs. S. and he wants to keep it going. In addition

to this notice that Rose will sign, she wants to write to her mother to drop these suits and turn the property over. If she don't we will bring you and she back here with warrants under a criminal charge and face these letters she has written, all right. If you will sign this bill of sale and she signs the other paper, and you send your wife $100.00 we will let the matter go, and you and she can go on if you want to, but you will not leave Great Falls until you do, as the officers there are on your tracks awaiting a wire from us any minute. When this is done you had better shake that woman and go to work some place and your wife will join you if you will treat her right. She can make trouble for both of you any time she wants to but she says she will let it go if you comply with these requests. I have had a number of letters from different people there during the past few weeks and know every move you people make. Trusting that we will hear from you without delay and that these papers will be signed and that you will send your wife some money I remain. Yours truly, A. Sherin."

"Office of A. Sherin, City Attorney, Watertown, S. D. Watertown, S. D. November 7, 1907. Mr. Floyd L. C., Wallace, Idaho. Dear Sir: * * * Your wife has just been in here, and when she heard what had been going on and that you were still keeping Rose posted on everything that was said and done, and she was sending it to her mother, she said that she would now insist on the paper being sent her from Rose S. and you, to have these goods turned over to her at once, and if this is not done within ten days she will swear out a warrant for both of you and send out there after you. Now Floyd I don't want to see you get into any trouble, but you have not used your wife right, and unless you send that paper from Rose S. to have these goods turned over at once, there will certainly be a warrant sent out there after both of you. * * * Now, to save any trouble, you send me a paper from Rose S., and have her write to her mother a letter authorizing her to turn over that property to your wife, or else you and she will hear from us in another way. There is not enough property to fight about and if it goes through Court Mrs.

S. will not get enough out of it to be of any use to her, as it will be all eat up in attorney's fees. Now don't delay in this matter, but attend to it at once. We know where Rose is and all about what is going on out there and will insist upon something being done within ten days, or else there will be trouble. Yours Truly, A. Sherin."

The respondent in his brief, among other statements, uses the following language: "What attorney would not make such an effort to get a little property for a deserted woman and two little children? He would not be doing his duty to his client if he did not use every effort and every persuasion to get something for her and her children. * * * There was no professional ethics violated in the writing of these letters. In fact, any person who knows all the facts and circumstances connected with this outrageous affair, would not think that the defendant went far enough to recover what belonged to the wife. There is nothing in that charge upon which any attorney should be disbarred." We are unable to agree with counsel in the above statement. This court cannot set the seal of its approval upon the methods used by respondent no matter how just his motives, nor whether the statutes have made such methods criminal. The very least that can be said in relation to an officer of the court resorting to such means to gain an end is that it is grossly unprofessional, and such as calls for severe censure from the courts. In Hackett v. King, 6 Allen (Mass.) 58, it was decided that, though a person was arrested under a legal warrant, and by a proper officer, yet, if one of the objects of the arrest was to extort money, or enforce the settlement of a civil claim, such arrest is a false imprisonment by all who have directly or indirectly procured the same or participated therein for any such purposes; and a release and conveyance of property, obtained by means of such arrest, is void. In Taylor v. Jaques, 106 Mass. 294, the court, in speaking of a certain instruction given by the lower court, said: "We do not concur with that view of the law. If he had embezzled their funds, they had a right to have him prosecuted. If he owed them a debt, they had a right to accept security for it. But they would have no

right to make use of a criminal process for the collection of a debt. An arrest, even upon a legal warrant, and upon a criminal charge, to compel the payment of a mere debt, would be a misuse of legal process; and the threat of such an arrest may constitute unlawful duress." And if the acts were criminal, it certainly must be conceded that it was a most serious breach of "professional ethics" for an officer of a court, acting as such officer, to willfully violate the criminal laws of his country.

Section 633 of the Revised Penal Code of this state reads as follows: "Extortion is the obtaining of property from another with his consent induced by a wrongful use of force or fear, or under color of official right." Section 634 of such Code reads in part as follows: "Fear such as will constitute extortion may be induced by a threat either (2) to accuse him or any relative or member of his family of any crime; (4) to expose any secret affecting him or them." Section 638 of such Code reads as follows: "Every person who with intent to extort any money or other property from another sends to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in section 634 is punishable in the same manner as if such money or property were actually obtained by means of such threat." Section 190 of such Code reads as follows: "Every person who, having knowledge of the actual commission of a crime or violation of statute, takes any money or property of another, or any gratuity or reward, or any engagement or promise therefor, upon any agreement or understanding, express or implied, to compound or conceal such crime, or violation of statute, or to abstain from any prosecution therefor, or to withhold any evidence thereof, is punishable as follows. * * * "

To our minds the evidence proves beyond all possible doubt that the respondent, acting as an attorney at law, wrote the letters in question with an intent to and hoping thereby to obtain both money and other personal property from said C. and his paramour. It clearly appears to us that the respondent hoped and trusted that the threats contained in such letters would induce in

the minds of such parties such fear as would result in their com-
plying with the demands of such letters. This fear it was sought
to induce by these threats was the fear of being arrested and
prosecuted for the commission of crime. It might be claimed on
the part of the respondent that, where the motive was to obtain
money or property which justly belonged to his client, it would
not be extortion, because in that case there was no "wrongful
use of force or fear." The word "wrongful," as used in this
statute, has no reference whatever to the question of the justness
of the ultimate result sought, but relates solely to the methods
used to obtain such result. Furthermore, it is certainly clearly
implied from the language of these letters that, if the demands
therein contained were complied with, no prosecutions of the
crimes of which the parties might have been guilty would follow;
or, in other words, the writer of these letters impliedly offered to
compound all the crimes of which these parties might have been
guilty. Offering to compound crimes is certainly a wrongful ap-
peal to one's fears. As was said in Eadie v. Slimmon, 26 N. Y.
12 (82 Am. Dec. 395): "Either the accusation which the defend-
ant brought against Eadie was entirely unfounded, or he was
seeking to compromise a criminal offense. If he knew that a
crime had been committed by Eadie, he had no right to compro-
mise it in this way."

From the findings of the referee, it might be inferred that
he considered it material that the respondent herein was not seek-
ing to obtain this property for himself and would not be benefited
by the obtaining of same. That certainly is absolutely immaterial.
If, as claimed by the respondent himself, these letters were writ-
ten by him with the full knowledge of his client, the respondent,
in assisting her, by advising and writing the letters to carry out
the scheme, rendered himself jointly guilty with her of the crime
of extortion if, under such facts, she would be guilty. It might
be claimed that, inasmuch as the charges contained in such letters
were true, no crime was committed by respondent. The offense
before us lies, not in making the charges of wrongdoing upon the
part of C. and his paramour, but in making threats of prosecution

based upon such charges. The fact that they were guilty of the crimes charged would not render the writing of the letters less criminal. The state of California has identically the same statutes in relation to extortion as sections 633, 634, and 638 quoted above, and, in the case of Morrill v. Nightingale, 93 Cal. 452, 28 Pac. 1068, 27 Am. St. Rep. 207, in discussing the question as to whether or not the truthfulness of the charges made by the defendant was a defense to the charge of extortion, the court said: "Under that kind of menace which consists in a threat of injury to the character of a person, it is entirely immaterial whether such person is guilty or innocent of the crime to be charged. It certainly would be no defense to the accusation of extortion that the charges or publications threatened to be made by the defendant, and by which he obtained valuable property, were true. The truth or falsity of these matters form no element in establishing the guilt or innocence of a defendant charged with extortion." See, also, People v. Choynski, 95 Cal. 640, 30 Pac. 791.

It is therefore clear to this court that finding No. 11 should be set aside, and that in lieu thereof this court must find that the letters in question were written with intent to extort money and other property from said Floyd L. C. and Rose S., unless the obtaining of this particular property and particular money would not constitute extortion, owing to the fact that, for all that appears herein, the property rightfully belonged to respondent's client, and the $100 was justly due her from her husband. For the purposes of this cause it must be presumed that the wife was justly entitled to the property and money.

This presents to us squarely a question upon which there seems, at first glance, to be an unreconcilable conflict of authority. One line of decisions, commencing with People v. Griffin, 2 Barb. (N. Y.) 427, holds that, in order for the taking of property to amount to extortion, it must be property to the possession of which the taker did not make an honest claim of right; and this court also held that an attempt to collect what the party believed to be an honest debt could not be held to be done with an "intent to extort." This case is followed in State v. Hammond, 80 Ind.

80, 41 Am. Rep. 791; McMillen v. State, 60 Ind. 216; Mann v. State, 47 Ohio St. 556, 26 N. E. 226, 11 L. R. A. 656. Owing to difference in the wording of the statutes of the above states from that of this state, we think these cases are of little weight as authority. Moreover, we believe that the courts of Indiana and Ohio overlooked a material difference between their statute and that of New York. The New York statute before the court in the Griffin Case provided: "Every person who shall knowingly send or deliver, or shall make, and for the purpose of being delivered or sent, shall part with the possession of, any letter or writing, with or without a name subscribed thereto, or signed with a fictitious name, or with any letter, mark or other designation, threatening therein to accuse any person of any crime, or to do any injury to the person or property of any one, with a view or intent to extort or gain any money or property of any description, belonging to another, shall, upon conviction, be adjudged guilty of an attempt to rob, and shall be punished by imprisonment in a state's prison not exceeding five years." It will be noted: (1) That the intent is to "extort or gain"; (2) "property belonging to another"; and (3) the offense is designated an "attempt to rob." Under a statute so worded there certainly was reason to hold that the word "extort" was used with a restricted meaning. Section 287 of the Rev. Penal Code of South Dakota states: "Robbery is the wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear," and it is universally held that robbery is forcible larceny. It is thus seen that in robbery there must always be not only the force or fear, but there must be a larcenous or wrongful taking. It thus follows that under the New York statute it clearly appeared that, in order for there to be an offense, the attempted taking of the property, as well as the means resorted to to achieve such taking, must be wrongful. It is universally held that there can be no robbery by a person of his own property to which he is lawfully entitled to possession; it is held by the great weight of authority that there can be no robbery of goods to the possession

of which the taker honestly believes himself entitled; and the courts of several states hold that it is no robbery to take property where the taker honestly believes he has a right to same for the payment of a debt due him. See cases referred to in note following Glenn v. State, 13 Am. & Eng. Ann. Cas. 775, 776. In Ohio and Indiana the offense now before us is not spoken of in the statutes as an attempt to rob, and the statutes do not state that the property taken shall be that "belonging to another"; but the statutes of those states use the phrase "extort or gain," and it might well be said that in using the word "extort" in connection with "gain" it was intended to provide that the party taking the property must "gain" something in the sense of securing profit.

Section 638 of our Penal Code uses the phrase, "with intent to extort any money or other property from another." Neither is the word "gain" used, nor does the statute provide that the property to be extorted shall be that "belonging to another." Looking now to section 633 of our Code for the definition of extortion, we again find that the property to be obtained is not restricted to property "belonging to another." It seems clear to us that under our statutory definition of extortion, we have a very comprehensive crime, including within its express terms, as a small part thereof, everything that comes under the definition of robbery, so that robbery is, under our statute, but a high degree of extortion. This is further shown by section 635 of our Penal Code which provides: "Every person who extorts any money or other property from another, under circumstances not amounting to robbery, by means of force or any threat such as is mentioned in the last section, is punishable by imprisonment in the state prison not exceeding five years," thus clearly showing that there can be both extortion amounting to robbery and extortion not amounting to robbery. Analyzing our definitions of extortion and robbery, it is apparent that to rob there must be a "wrongful taking"—that is, a taking of property the possession of which a person would not be entitled to recover in an action brought to secure same; while to extort it is not necessary that the "obtaining" of the property be wrongful in the sense that the party be not lawfully

entitled to the possession thereof, but it is only necessary that the means used to obtain the property be wrongful. Thus extortion under our statute includes any "obtaining of property," wrongful or otherwise (that is, the "obtaining of property" to which the party may or may not be lawfully entitled), whenever such property is obtained through the "wrongful use of force or fear."

It might be claimed that the term "extort" in itself implies the getting of something to which a party is not entitled as distinguished from getting that to which a party is entitled, and that therefore, by the use of that word, it clearly appears that in order to constitute "extortion" the property obtained must be that to which the taker is not honestly and legally entitled. This is certainly a mistaken idea of the meaning of the word "extort." Webster's New International Dictionary states that the word is derived from the Latin word "extortus," meaning "to twist or wrench out," and defines the word: "(1) To wrest from a person by physical force, menace, duress, torture, or any undue or illegal exercise of power or ingenuity; to wring (from); to exact; to take or receive by extortion; also, rarely, literally, to wrench or tear away (from); as, to extort bribes; to extort contributions from the vanquished; to extort confessions of guilt; to extort a promise; to extort payment of a debt." The above definitions and illustrations of use of term clearly show that one can extort that to which he is rightfully entitled, as well as that to which he is not entitled, and show that the word is properly used to denote the method used to obtain the thing sought, rather than to limit the thing to be obtained in accordance with title or right of possession thereto.

Turning now to the decisions of other courts. In State v. Bruce, 24 Me. 71, the court said: "The instructions 'that, if the defendant made the threat maliciously and with intent thereby to extort property from Lyon, it was not essential in the case whether the said Lyon had been caught by the said Bruce in the act of stealing the property of the said Bruce or not' were also correct. A person whose property has been stolen cannot claim the right to punish the thief himself without process of law, and to make

him compensate him for the loss of his property by maliciously threatening to accuse him of the offense, or to do an injury to his person or property, with intent to extort property from him. A threat made by one whose goods had been stolen that he would prosecute the supposed thief for the offense, if there were grounds to suspect him to be guilty, could not be considered as made maliciously and with intent to extort property, unless there were other proofs of malice and intended extortion. Nor do the in‑ structions so state. The testimony to prove the malice and intended extortion is not presented; and it must be presumed to have been sufficient and satisfactory, especially after the defendant has been found guilty by two juries."

In Commonwealth v. Coolidge, 128 Mass. 55, the court said: "The first instruction asked that the defendant must have maliciously intended to obtain that which in justice and equity he knew he had no right to receive, and the other, which differs only in form from that, that the defendant was not guilty if he believed that Chapin actually owed him, could not properly have been given without qualification; and the language of the presiding judge was entirely accurate when he said that the law did not authorize the collection of just debts by the malicious threatening to accuse the debtor of a crime."

In State v. Logan, 104 La. 760, 29 South. 336, the court said: "In this state the technical offense known to the common law as 'extortion' was punishable under section 868, Revised Statutes, which, by its terms, applied exclusively to officers. State v. Lubin, 42 La. Ann. 79 [7 South. 68]. By Act 63 of 1884 it was declared that 'any person' who 'shall threaten to kill * * * with intent to extort money * * * shall, upon conviction, be imprisoned,' etc. This statute has been held to be constitutional in an opinion in which Mr. Justice Miller, as the organ of the court, said: 'It defines the offense of attempting to extort money by threats or other unlawful devices.' State v. Rushing, 49 La. Ann. 1532 [22 South. 799]. There is no question, then, of the application of the law to the defendant, and we can find no sufficient reason for holding that it does not apply to the act which he

is charged with having committed, since the threats charged against him are within its terms, whether he claimed that the money demanded was due to him or not. Cases decided in other states in which it is said that a contrary view has been held are, perhaps, based upon the language of particular statutes, which may have admitted of the exception for which the defendant's counsel here contends."

In Cohen v. State, 37 Tex. Cr. R. 118, 38 S. W. 1005, the court said: " 'Extort' means 'to obtain from a holder desired possessions or knowledge by force or compulsion; to wrest from another by force, menace, duress,' etc. See Cent. Dict. In the law dictionaries the word 'extort' is not found, and 'extortion' is applied to officers 'who, by color of office, unlawfully take any money or thing of value that is not due him, or more than is due, or before it is due.' See 7 Am. & Eng. Enc. Law; 1 Bouv. Law Dict.; and 1 Rap. & L. Dict. We apprehend that our statute, in using the word 'extort,' had reference to its meaning in its broader sense, as given above from the Century Dictionary. We do not construe this statute to mean, by the use of the term 'extorting,' to be only applicable to cases where there is no debt existing between the parties. On the contrary, under this article a party may be guilty of the offense of sending or delivering a letter threatening to accuse another of a criminal offense, with the view of extorting money, although the party may be justly indebted to the sender of such letter. One object of the statute, as we take it, is to prevent persons from sending such letters, and using the criminal laws of this state to collect debts that might be due and owing them."

We believe that our statute was enacted to prohibit just such acts as those of the respondent; that in writing and sending the letters he came clearly and fully within the provisions of said section 638, and that finding No. 11 of the referee was error. The referee, as conclusions of law, found: "The evidence submitted does not prove the said A. Sherin guilty of any crime, misdemeanor, or statutory offense, and does not show him to be of such immoral character as would justify his disbarment or sus-

pension from practice." In lieu of the above this court finds as a conclusion of law: "The evidence submitted proves the said A. Sherin, while acting as an officer of this court, to have been guilty of the crime of writing letters with the intent to extort money and other property from others, as defined in section 638, Rev. Penal Code, which conduct demands the condemnation of this court, and requires this court to either suspend or disbar respondent from practicing as a member of the bar of this court."

This court fully realizes the severity of a judgment depriving one of the right to pursue a chosen profession, which profession may be the only means open for the procurement of a livelihood, especially where the person has long since abandoned other fields for that of his chosen profession. We are satisfied in this case that, while the means used by respondent were clearly criminal, and grossly unprofessional, even if they had not been criminal, yet the ultimate end sought by him was undoubtedly just. It further appears to our satisfaction from the testimony of the members of the bar in respondent's home city that the respondent, in general, has so conducted himself as an attorney that he stands well among his fellow attorneys. While such misconduct as proven in this matter cannot be overlooked, we believe the respondent will in the future conduct himself as befits a member of an honorable profession, and we believe the ends of justice will best be subserved by the temporary suspension of respondent from the practice of his profession, rather than by his disbarment; therefore, it is the order of this court that the respondent be suspended from the practice of the profession of law in all of the courts of this state for a period of six months from the date of the formal judgment herein, and until he shall have paid the costs of this proceeding, to be taxed by the clerk of this court.

Let judgment be entered accordingly.

McCOY, J., took no part in this decision.