## In re SHERIN.

Letters written by an attorney for a deserted wife to her husband, under authority of the wife to do what he thought was right, are not privileged communications, within Code Civ. Proc. § 486, prohibiting a husband or wife from testifying to any communication made during the marriage, but are admissible against the attorney in disbarment proceedings for writing the letters with intent to extort property from the husband.

Where, in proceedings to disbar an attorney, he has been compelled to incur considerable expense in defending some of the charges which were not established, the court, disbarring him on grounds proved, will not allow any costs or disbursements to either party.

McCoy, J., dissenting.

(Opinion filed, December 15, 1911.)

On rehearing. Former judgment modified.

For former opinion, see 27 S. D. 232, 130 N. W. 761.

HANEY, J. In its former decision, this court concluded: "The evidence submitted proves the said A. Sherin, while acting as an officer of this court, to have been guilty of the crime of writing letters with the intent to extort money and other property from others, as defined in section 638, Rev. Penal Code, which conduct demands the condemnation of this court, and requires this court to either suspend or disbar respondent from practicing as a member of the bar of this court." In re Sherin, 27 S. D. 232, 130 N. W. 761. On the rehearing, it was contended (1) that the letters referred to in such decision were not admissible for the reason they were communications between a husband and wife, and (2) if admissible respondent was not guilty of conduct for which he should be either disbarred or suspended.

[1] The letters in question were written and mailed by the respondent, who was the attorney of the wife of the person to whom they were sent. They were signed "A. Sherin." They did not purport to have been written by the wife, or to be her letters. An attempt was made to show that they were in fact her letters, but she, as a witness for respondent, testified on cross-examination as follows: "Q. You say that you dictated these letters to Mr. Sherin that he wrote to your husband while he was away? A. I didn't say I dictated. I said I authorized him to do what

he thought was right." So the letters were not in any sense letters of the wife to her husband. They were precisely what they purported to be—communications between the wife's attorney and her husband—and as such were not privileged under the statute in this state, or under the rules of evidence in any jurisdiction, so far as our research has extended. In all the decisions cited by the respondent, the communication was either a conversation between husband and wife, or a letter written and signed by one or the other. The question here·involved is not whether every communication "made by one to the other during the marriage" (Rev. Code Civ. Proc. § 486) is privileged, regardless of the nature of the communication. On that question no opinion is expressed. Whether the phrase "any communication" was intended to mean only confidential communications, as construed by some courts, need not now be determined. Neither the statute nor the common law extends the privilege under discussion · to communications made by a third person to either the husband or wife. No reason exists for so extending it. "The essence of the privilege is to protect confidences only." 4 Wigmore on Ev. §· 3336. The statute does not, by its terms or by implication, exclude communications made by the attorney of one spouse to the other. Such were the communications in this case. If these letters, though written by the respondent, were signed by the wife—if they were in fact her letters—the situation would be substantially different. Though she may have known their contents before they were sent, may have approved of the same, and may have expressly authorized the respondent to send them, they were not her letters; they were the letters of her attorney, and were not communications made by her within the meaning of the statute excluding communications between husband and wife. For this reason, they were clearly admissible on the trial of this proceeding, notwithstanding the wife testified that she had not consented to their introduction. It, therefore, is unnecessary to consider whether or not they were admissible for the further reason that they had passed into the hands of third persons, who produced the copies which were received in evidence.

After a careful reconsideration of the record, the court adheres to the conclusion announced in its former decision concerning the means employed by the respondent to induce his client's husband to comply with her demands. Such demands may have been just; the wife may have been entitled to all respondent sought to obtain for her; but this court, as indicated in its former decision, cannot approve of the methods employed by the respondent to secure his client's rights. It clearly appears that he intended to induce the husband to accede to his wife's demands through fear of being accused of a crime; and that he intended the husband to understand that he would not be prosecuted for such crime if he did accede to such demands. The fact that such demands were just, that the object sought was a laudable one, does not render the means employed any less unprofessional, though that fact should be considered in determining whether defendant ought to be disbarred or only suspended. In view of all the circumstances disclosed by the record, it is the conclusion of the court that the respondent should be suspended for 30 days from and after the filing of this decision.

[2] As respondent has been compelled to incur considerable expense in defending numerous charges embraced by the accusation, which were not proven, neither party will be allowed to recover any costs or disbursements in this court.

McCOY, J. (dissenting). Unless the accused was guilty of extortion, or of aiding or abetting the same, in writing the letters to Carey, there is no ground for censure, no ground for suspension from practice. The day and age of the world has gone by when an accused should be convicted upon "general principles" without evidence sufficient to sustain conviction. It is impossible for me to conclude that the evidence submitted in this case is sufficient to constitute the offense of extortion. Formerly extortion could only be committed by a public officer for exacting property or payment of money for fees to which he was not entitled. If the officer was entitled to the sum exacted, the offense did not exist. Subsequently the offense of extortion was extended so as to include persons, not officers, who extorted money by means of

threatened criminal prosecution. Legal extortion means to exact money or property from another to which you are not entitled. It is the illegal, unlawful, and wrongful intent to gain property from another, by means of threats of criminal prosecution, that constitutes the gist of the offense. In the case of People v. Griffin, 2 Barb. 427, a much-cited case from New York on this subject, it was held that the statute against sending threatening letters with intent of extorting money applied only to those cases where the intent was to obtain that to which the writer was not entitled, and that it did not apply to cases where the person threatened actually owed the writer the sum claimed by him; the court saying that a person cannot extort money which is justly his due. In the case of State v. Hammond, 80 Ind. 80, 41 Am. Rep. 791, where the creditor by letter threatened to prosecute the debtor for having obtained money under false pretenses, if not repaid within a certain time, the court in rendering the opinion said: "We are of the opinion that the threat to prosecute for an alleged offense connected with the creating of the debt, when the object of the threat is merely to secure the payment of the debt due from the person threatened to the person making the threat, does not come within the spirit or purpose of the statute." In the case of Mann v. State, 47 Ohio St. 556, 26 N. E. 226, 11 L. R. A. 656, where defendant claimed that one Bingham had poisoned two colts of defendant, and the defendant wrote a letter, threatening criminal prosecution, unless Bingham paid for the colts, it was held not to constitute extortion, and the court said: "To constitute the offense described in the statute, there must be an intent to extort or gain the objects therein specified. Extortion is a wrongful exaction. An honest effort on the part of a creditor to collect a just debt by accusing or threatening to accuse the debtor of a crime with which the debt is connected or out of which it arose, does not, in our opinion, come within the purview of the statute; nor should the statute be construed as covering the case of an owner who demands from the offender a reasonable compensation for property which he has maliciously destroyed, and accompanies his demand with a threat to accuse the offender of a crime." I have been wholly unable to find any decision or any authority in conflict

with the principle laid down in these three decisions, but, on the contrary, have found many other cases, although not as directly in point, holding to the same view.

In the case at bar, the accused attorney wrote a letter to Carey, demanding that Carey pay to Carey's wife, whom he had deserted and abandoned and left penniless with small children, the sum of $100 for her support, and that if this sum was not paid the accused would see to it that a criminal prosecution was commenced against Carey, who was then living in open adultery with another woman, not his wife. The accused wrote this letter at the instigation of and as attorney for the deserted wife. Under the law of this state, Carey was legally obligated to support his wife and children, and there was nothing demanded in this letter, other than that to which the wife was legally entitled. There was no intention or attempt to exact or extort money to which the wife was not lawfully entitled. There is no possible inference that can be drawn from the contents of this letter that the accused, or his client, intended to gain anything by means of this letter to Carey to which the client was not lawfully entitled. If Sherin had written to Carey and accused him of leading a criminal life, and demanded the payment of $100 as hush money not to prosecute him, with the intent to thus secure $100 for his own use and benefit, that would undoubtedly constitute extortion. But in this case the demand was not for $100 as a consideration for refraining from such prosecution, but was for $100 to support the abandoned wife and children, to which they were justly entitled under the law of this state; and the fact that this lawful demand for support for the abandoned wife had coupled with it a threat to prosecute would not constitute extortion, because the demand made was lawful, and there was no attempt made or intent to gain or exact property they were not entitled to. There was no unlawful exaction in the circumstances. It was the unlawful exaction of fees to which an officer was not entitled that constituted the original offense of extortion, and the word "extort" still has the same meaning. The offense of obtaining money or property by means of false pretenses is kindred and somewhat analogous to

the offense of extortion. We apprehend that one could not be successfully prosecuted for obtaining money by means of false pretenses where it was shown that the money thus obtained was justly due to the alleged offender, no matter how false the representations might be. False representations alone, unless coupled with an intent to thereby unlawfully obtain the money of another, do not constitute a criminal offense. It is the obtaining of the property of another to which you are not justly entitled that constitutes the substance of the crime. Neither will a threat of criminal prosecution alone, not coupled with an unlawful intent to thereby obtain another's money, constitute the offense of extortion.

The evidence in this case conclusively shows there was an honest effort on the part of Mrs. Carey and her attorney, the accused, to have the criminal husband furnish her $100 to assist in her means of support to which she was lawfully entitled, and nothing more. That was the intent with which the letter was written, and not for the purpose of unlawful exaction or gain. It is an elementary principle that a criminal intent is always necessary to constitute a crime, and where such criminal intention does not appear then the act complained of cannot be deemed criminal. It is always a good defense for one charged with larceny to show that the defendant honestly and in good faith believed, under circumstances warranting such belief, the property to be his own, although mistaken in such belief, for the reason that evidence of that character relieves him of criminal intent. And, where the act may be construed lawful as well as criminal, the intent must be presumed lawful. The referee in this case has found that there was no criminal or unlawful intent on the part of the accused in writing the said letter to Carey, but, on the contrary, found that it was written from good and justifiable motives. We should not disturb this finding, unless it is opposed by a clear preponderance of the evidence. In my judgment, all the evidence there is in the case is in favor of this finding of the referee, who saw and heard the witnesses testify, and it should not be set aside.