THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HENRY FICHTNER, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH McGUINNESS, Appellant.

Second Department, December 29, 1952.

*Edwin J. Freedman* and *Joseph Lite* for appellants.

*Frank A. Gulotta, District Attorney* (*Henry P. De Vine* of counsel), for respondent.

JOHNSTON, J. Section 850 of the Penal Law provides: " Extortion is the obtaining of property from another, * * * with his consent, induced by a wrongful use of * * * fear * * * ".

Section 851 of the Penal Law provides: " Fear, such as will constitute extortion, may be induced by an oral or written threat: * * * 2. To accuse him, or any relative of his or any member of his family, of any crime; or, 3. To expose, or impute to him, or any of them, any * * * disgrace; * * * ".

Defendant Fichtner is the manager, and defendant McGuinness the assistant manager, of the Hill Supermarket in Freeport, Nassau County. On January 30, 1951, an indictment was filed against both defendants, charging them in two counts with the crime of extortion in that on January 18, 1951, defendants, aiding and abetting each other, obtained $25 from one Smith, with his consent, which consent defendants induced by a wrongful use of fear by threatening to accuse Smith of the crime of petit larceny, and to expose and impute to him a disgrace unless Smith paid them $25.

Smith testified that on January 18, 1951, he purchased a number of articles in the Hill store for a total of about $12, but left the store without paying for a fifty-three-cent jar of coffee, which he had concealed in his pocket. After Smith left the store he returned at defendant Fichtner's request. Defendants then threatened to call a policeman, to arrest Smith for petit larceny, with resulting publicity in the newspapers and over the

radio, unless he paid $75 and signed a paper admitting that during the course of several months he had unlawfully taken merchandise from the store in that amount. Although Smith admitted he had shopped in Hill's Freeport store about sixteen times and in Hill's Merrick store for about two years, he insisted that the only merchandise he had ever stolen was the fifty-three-cent jar of coffee on the evening in question, and a sixty-five-cent roll of bologna one week previously. However, he finally signed the paper admitting that he had unlawfully taken $50 worth of merchandise from the store during a period of four months. That evening Smith paid $25 in cash and promised to pay the balance in weekly installments of $5. He testified he was induced to sign the paper and make the payment because defendants threatened to accuse him of petit larceny and to expose him to the disgrace of the criminal charge and the resulting publicity. It is not disputed that the $25 taken from Smith was "rung up" on the store register; that the money went into the company funds and that defendants received no part of the money. During the following week Smith reported the incident to the police, and defendants were arrested on January 25, 1951, when Smith, accompanied by a detective, returned to the store and paid the first $5 installment.

Defendants testified that over the course of several weeks they saw Smith steal merchandise amounting to $5.61, and they honestly believed that during the several months that Smith had been shopping, he had stolen merchandise of the value of $75; that on January 18, 1951, Smith freely admitted that during the four-month period he stole merchandise of the value of $50, and that he voluntarily signed the paper admitting thefts in that amount; that on that date he paid $25 on account and promised to pay the balance in weekly installments.

That the Smith incident was not an isolated one, but rather part of a course of conduct pursued by defendants, even after warning by the police to discontinue the practice, was not only clearly established but admitted by defendant Fichtner.

One witness for the People testified that she paid defendants $25 after they threatened to accuse her husband of stealing a thirty-one-cent bottle of cherries. A second witness testified that she paid defendants $50 after they threatened to accuse her of stealing $1 in merchandise. A third witness testified that she paid defendants $50 after they threatened to accuse her of stealing a sixty-five-cent can of crabmeat. A fourth witness testified that she paid defendants $5 after they threatened to accuse her of stealing a seventy-five cent item. A fifth witness testified

that she paid defendants $15 after they threatened to accuse her of stealing meat of the worth of $1. In addition to the oral testimony of these five witnesses, their signed statements, similar to that signed by complainant, were received in evidence. In the statements the witnesses admitted the theft of merchandise from the Hill Supermarket in the various sums which they had paid. There were also received in evidence twenty-two other such statements, in which various persons (who did not appear at the trial) admitted the theft of merchandise — six for $50; one for $25; four for $10; one for $5; five for sums ranging from $2.36 to $.37, while five were for unstated amounts. No question is raised on this appeal as to the admissibility of this evidence.

A police officer testified to a conversation with defendant Fichtner at police headquarters, at which the latter told him it was his practice to try to get from $50 to $75 from any shoplifter he caught because he was short in his inventories. Fichtner testified that inventory losses may cost him his job. He admitted that in April, 1950, he had been warned by a police officer, to whom a customer had complained, that the practice of compelling a shoplifter to sign a form and demanding money was something that could be termed extortion, and if there were any shoplifting, he should call the police because that is what courts are for. Fichtner also testified he called up the company lawyer, who assured him of the legality of the use of the forms and that, as long as no threats were made and the people signed and agreed to make restitution, what he was doing was perfectly legal.

The court charged, without exception, that (1) in order to convict, there must be a finding of intent on the part of defendants wrongfully to obtain money from Smith by means of unlawful threats; (2) it is immaterial that the person who obtains the money retains no part of the proceeds; the gist of the crime is the loss of money by Smith by reason of a criminal act on the part of defendants; (3) threats to do a lawful act may become unlawful if made with an unlawful motive for an unlawful purpose; (4) to accuse one of the crime of petit larceny or to impute disgrace to him may be lawful under certain circumstances; that where one steals a small amount of money and is threatened with prosecution if he does not return the money, that is a lawful threat because in such a case the intent would be to have the wrongdoer return the amount he owes; on the other hand, if one threatens to prosecute a person unless he pays an amount over and above what is rightfully due, and by such threat it is intended thereby to induce fear in that person,

such a threat would be an unlawful threat to do an unlawful injury, and would constitute extortion; (5) the fact that Smith was guilty of larceny does not preclude the jury from finding defendants guilty of extortion. As heretofore stated, defendants were found guilty on both counts.

In my opinion, the verdict is amply supported by the evidence. Implicit in the verdict is a finding that Smith stole only $1.18 in merchandise as he admitted, or at most the $5.61 which defendants claimed they actually saw him steal, and that he was induced to pay the $25 on January 18, 1951, by defendants' threats to accuse him of crime and to expose him to disgrace. By its verdict, the jury rejected defendants' contention that Smith voluntarily admitted having stolen $50 worth of merchandise and that they demanded from Smith only what was rightfully due.

Defendants requested the court to charge that '' if in the judgment of the jury the defendants honestly believed that the amount which the complainant paid or agreed to pay represented the approximate amount of the merchandise which he or they had previously stolen from the Hill Supermarket, then the defendants must be acquitted.'' The court refused the request '' except as already charged ''. Although two members of the court are of the opinion that for the reason stated the trial court was justified in refusing to charge as requested, four members of the court are of the further opinion that the request was legally incorrect and, therefore, should have been refused. In other words, we believe that the portion of the main charge to the effect that, under the circumstances of this case, extortion is committed only when one obtains property from another by inducing fear in that other by threatening to accuse him of crime unless he pays an amount over and above what was rightfully due was more favorable to defendants than that which they were entitled to receive. In our opinion, the extortion statutes were intended to prevent the collection of money by the use of fear induced by means of threats to accuse a debtor of crime, and it makes no difference whether the debtor stole any goods, nor how much he stole, and that defendants may properly be convicted even though they believed that the complainant was guilty of the theft of their employer's goods in an amount either equal to or less, or greater than any sum of money obtained from the complainant. Nor is defendants' good faith in thus enforcing payment of the money alleged to be due to their employer a defense. It may not be held that the court erred in refusing the request to charge, which (as will presently

appear) was legally erroneous, even though the request was substantially to the same effect as the main charge.

An examination of the extortion statutes (Penal Law, §§ 850, 851) shows that, in order to constitute the crime of extortion, the consent of the injured party in surrendering his property must be induced by the wrongful use of fear, and that any fear which comes within the language of section 851 is wrongful. Under subdivision 1 of section 851, fear, such as will constitute extortion, may be induced by a threat to do an unlawful injury, which inferentially recognizes that fear induced by threat to do a lawful injury is not a crime. There is no such qualifying language in subdivision 2 of section 851. In other words, under subdivision 2, fear induced by a threat to accuse one of a crime may be extortion, even though the accusation be just.

In *Schoener* v. *Lissauer* (107 N. Y. 111, revg. 36 Hun 100) plaintiff's son was arrested on the complaint of defendants, who charged him with embezzlement and larceny of $50. Subsequently, defendants claimed their loss to be $4,000 or more. Defendants demanded payment of $2,000 from relatives of the accused, and stated that, if it were not paid, the accused would have to go to prison. Plaintiff, moved by fear induced by defendants' threat to accuse her son of crime, paid defendants $1,000 in cash and gave them a $1,000 mortgage. The Court of Appeals held that these facts warranted a judgment for plaintiff directing the cancellation of the mortgage.

Likewise, in *Adams* v. *Irving Nat. Bank* (116 N. Y. 606) it was held that a wife may avoid a contract induced and obtained by threats of imprisonment of her husband, and it is immaterial whether the threat is of lawful or unlawful imprisonment. Where, therefore, plaintiff was induced, by a threat of her husband's arrest, to pay a debt due from him to defendant, an action was maintainable to recover back the moneys paid as obtained by undue influence.

If it is duress to obtain property (a bond and mortgage, as in the *Schoener* case [*supra*], or money, as in the *Adams* case [*supra*]) by fear induced by a threat to accuse one's relative or a member of his family of the crime out of which the indebtedness arose, sufficient to obtain a cancellation of the bond and mortgage, or a return of the money paid, then the obtaining of Smith's property in the case at bar also was induced by the wrongful use of fear.

Our view is sustained by the determinations in *People* v. *Beggs* (178 Cal. 79) and *Matter of Sherin* (27 S. D. 232), under statutes exactly the same as in this State.

In *People* v. *Griffin* (2 Barb. 427 [Gen. Term, 1st Dept., 1848]), relied on by appellants, defendant was prosecuted for threatening to destroy the property of one Heath unless Heath repaid to defendant a just debt amounting to $16. Defendant requested the trial court to charge that it was not extortion or gain to obtain by threats money that is justly due to the one who makes the threats and that, if the jury were satisfied that Heath was justly indebted to defendant for $16, defendant was not guilty of violating the statute. The court refused the requests. The judgment was reversed by a divided court on the ground that a defendant could be guilty of violating the statute there involved only where the intent was to obtain that which the party was not entitled to receive. However, the statute involved in the *Griffin* case (*supra*) was substantially different from the one involved in the case at bar in that (1) there the statute required an intent to " extort or gain ", while the extortion statutes do not contain that language and, therefore, it is not necessary to " gain " (i.e., to demand more than the return of stolen property) in order to be guilty of extortion; (2) there the statute required that the property obtained be property " belonging to another ", while the extortion statutes do not contain that language and, therefore, one may be guilty of extortion even though he obtains the return of his own property in violation of the statute; (3) there the statute designated the offense as an " attempt to rob " and there can be no robbery by a person of his own property, to the possession of which he is lawfully entitled or to the possession of which he honestly believes himself entitled. In any event, we share the view of the Circuit Court of Appeals for the Second Circuit that the *Griffin* case (*supra*) no longer represents the view of the New York courts. (*United States* v. *Pignatelli*, 125 F. 2d 643.)

In *State* v. *Hammond* (80 Ind. 80); *McMillen* v. *State* (60 Ind. 216), and *Mann* v. *State* (47 Ohio St. 556), cited by appellants, as well as in *State* v. *Ricks* (108 Miss. 7); *State* v. *Richards* (97 Wash. 587) and *State* v. *Burns* (161 Wash. 362), the statutes involved contained the words " extort or gain " and, therefore, it was held that, if one demands merely the return of stolen money (and not more) under a threat to prosecute if it is not returned, it is not extortion, there being no intent to " gain " thereby. As heretofore pointed out, the extortion statutes in this State do not require that there be " gain " in the obtaining of property as the result of the wrongful use of fear.

The law does not authorize the collection of just debts by threatening to accuse the debtor of crime, even though the

complainant is in fact guilty of the crime. In my opinion, it makes no difference whether the indebtedness for which a defendant demands repayment is one arising out of the crime for the prosecution of which he threatens the complainant, or is entirely independent and having no connection with the crime which forms the basis of the accusation. The result in both cases is the concealment and compounding of a felony to the injury of the State. It is that result which the extortion statutes were intended to prevent. (*People* v. *Wickes*, 112 App. Div. 39; *People* v. *Eichler*, 75 Hun 26 [Gen. Term, 1st Dept., 1894], appeal dismissed, 142 N. Y. 642.)

The judgments should be affirmed and the appeal from '' every intermediate order '' and from the orders denying the motions to set aside the verdict should be dismissed.

WENZEL, J. (dissenting). Defendants are the manager and the clerk second in command of a supermarket. By its verdict the jury found that, after complainant was observed shoplifting, defendants unlawfully threatened to accuse him of petit larceny and to expose him to disgrace unless he paid defendants a sum in excess of the value of the merchandise complainant stole. Complainant paid the sum demanded, which defendants turned over to the owner of the store.

The jury was charged, in effect, that the defendants should be acquitted if it was found that they had demanded of the complainant that he pay only what he rightfully owed, and that they might be convicted if they had threatened the complainant with prosecution unless he should pay an amount over and above what he rightfully owed. At the conclusion of the charge defendants requested the court to charge that '' if in the judgment of the jury the defendants honestly believed that the amount which the complainant paid or agreed to pay represented the approximate amount of the merchandise which he or they had previously stolen from the Hill Supermarket, then the defendants must be acquitted.'' That request was refused, '' except as already charged.'' In my opinion this was error. As the result of the court's charge and refusal to charge the jury was permitted to convict defendants of the crime of extortion on proof that they had induced complainant, by the threats alleged, to pay to defendants more than he rightfully owed for goods which he had stolen, even though defendants might have honestly believed that the amount demanded from complainant was the amount which he rightfully owed. In my opinion, although the question is one as to which there is a conflict of authority, if defendants, acting without malice and in good

faith, made an honest mistake, they were not guilty of the crime charged. There would then be no criminal intent. The defendants were not acting in their own behalf but in that of their employer, in recovering what they believed to be rightfully due it. I find no precedent to indicate that the statute was intended to cover a case of this kind. (*People* v. *Griffin*, 2 Barb. 427; *People* v. *Sheridan*, 186 App. Div. 211; *People* v. *Clark*, 242 N. Y. 313.) Although defendants' request was not framed with strict accuracy, there could have been no mistake as to what was intended, and in my opinion the substance of the request, at least, should have been charged. In addition, the verdict was against the weight of the credible evidence.

The judgments, and orders denying motions to set aside the verdict should be reversed and a new trial ordered; and the appeal from '' every intermediate order '' should be dismissed.

Nolan, P. J., Adel and Schmidt, JJ., concur, with Johnston, J.; Wenzel, J., concurs in the dismissal of the appeal from '' every intermediate order,'' but otherwise dissents and votes to reverse the judgments and orders denying motions to set aside the verdict, and to order a new trial, with opinion.

Judgments of the County Court, Nassau County, convicting defendants of the crime of extortion and suspending sentence, affirmed.

Appeal from '' every intermediate order '' and from orders denying motions to set aside the verdict dismissed.