[No. 14005.  Department One.  August 13, 1917.]

THE STATE OF WASHINGTON, *Respondent*, v.
FRANK J. RICHARDS, *Appellant*.[1]

THREATS—INFORMATION—SUFFICIENCY.  Under Rem. Code, § 2613, an information for blackmail is sufficient, where it charges that the accused, with intent to extort and gain $24,000 from one T., sought to compel him to execute a lease and other papers, under threats of accusing him of certain crimes and publishing the accusations.

SAME — NATURE AND ELEMENTS — "INTENT."  Under Rem. Code, § 2613, making the accusation of crime and certain other acts blackmail, if done with intent to extort or gain money or property, it is no defense that the accused thought that he was justly entitled to what he demanded, "intent" meaning that the purpose of the act was to extort or gain.

SAME—EVIDENCE—INTENT—COLLATERAL MATTERS—REBUTTAL.  In a prosecution for blackmail, the testimony of the accused, on cross-examination, that he had been advised by an attorney that his acts would not be blackmail, is not upon a collateral matter and may therefore be rebutted; since it would be material on the question of intent.

WITNESSES—PRIVILEGE—ATTORNEY AND CLIENT.  The rule of privilege respecting communications with an attorney does not extend to advice given by the attorney in contemplation of the future commission of blackmail, in which or in the avoidance of which, the client sought advice.

CRIMINAL LAW—INSTRUCTIONS—COMMENT ON FACTS.  In a prosecution for blackmail, it is not an unlawful comment upon the evidence for the court to state that written instruments were libelous or to state the legal obligation with respect to executing legal documents, or that there was no evidence to establish a legal duty; since the interpretation of written instruments is for the court and the court may correctly define a matter of law and determine the issues to be submitted.

Appeal from a judgment of the superior court for Clallam county, Ralston, J., entered November 23, 1916, upon a trial and conviction of blackmail.  Affirmed.

[1]Reported in 167 Pac. 47.

*L. F. Chester,* for appellant.

*Frank L. Plummer, T. F. Trumbull,* and *Rose & Lewis,* for respondent.

MORRIS, J.—Appellant was charged jointly with Edgar G. Mills with the crime of blackmail, and appeals from a separate trial and conviction.

The first question raised is the sufficiency of the information. The information is too long to set forth as a whole. It charges that the appellant and Edgar G. Mills, with the intent to extort and gain $24,000 from one Thompson, unlawfully and feloniously sought to compel Thompson to execute to appellant a ninety-nine year lease of certain real property owned by Thompson and sign other valuable papers under threats of accusing Thompson of assault, blackmail, seduction, larceny and other crimes, and with publishing a certain document in which Thompson is accused of these crimes in detail.

Our statute, Rem. Code, § 2613, thus defines blackmail:

"Every person who, with intent thereby to extort or gain any money or other property or to compel or induce another to make, subscribe, execute, alter or destroy any valuable security or instrument or writing affecting or intending to affect any cause of action or defense, or any property, or to influence the action of any public officer, or to do or abet or procure any illegal or wrongful act, shall threaten directly or indirectly—(1) To accuse any person of a crime; or (2) To do any injury to any person or to any property; or (3) To publish or connive at publishing any libel; or (4) To expose or impute to any person any deformity or disgrace; or (5) To expose any secret, shall be punished, etc."

The information was clearly sufficient even to its disgusting detail, as was the evidence to sustain the information and conviction. The publication threatened was grossly libelous. The attempt to extort money or valuable property was plain.

Appellant's main argument is addressed to three contentions: First, if appellant believed he was justly entitled

to that which he demanded, such belief is a defense, as the act complained of would then lack the essential element of "intent thereby to extort or gain." It must be admitted that to commit the crime charged there must be an intent to extort or gain, but that does not mean that one can, by the employment of the means used in this instance, compel another to bestow upon him that which he thinks or believes he is entitled to receive. What the statute means in the use of the word "intent" is that the purpose of the act—that which the actor had in mind in doing the act—was to extort or gain, and this purpose is accomplished when, by use of the means defined in the statute, one seeks in an unlawful manner to obtain money or property from another. The statute is directed against the means used as well as the purpose sought to be accomplished. The intent is not necessarily limited to "gain," but includes "to extort," that is to gain by wrongful methods; to obtain in an unlawful manner; to compel a payment by means of threats of injury to person, property or reputation. In this sense one can commit this crime though he is of the opinion that the money thus sought is actually due him. The law does not countenance forceful and unlawful collection even of just debts, and when one uses the methods set forth in this statute to obtain money or property, he commits the crime defined in the statute, irrespective of his belief that in so doing he is only attempting to obtain that which he is entitled to receive. *State v. Logan,* 104 La. 760, 29 South. 336; *State v. Bruce,* 24 Me. 71; *Commonwealth v. Coolidge,* 128 Mass. 55; *Cohen v. State,* 37 Tex. Cr. App. 118, 38 S. W. 1005; *State v. Hollyway,* 41 Iowa 200, 20 Am. Rep. 586; *In re Sherin,* 27 S. D. 232, 130 N. W. 761, Ann. Cas. 1913D 446, 40 L. R. A. (N. S.) 801. As to the fact, there is no warrant for any such claim of right. Appellant sought to compel Thompson, first, to execute to him a ninety-nine year lease of certain real property. There is no contention that Richards had either legal or equitable interest in this property or that he ever claimed he had. Second, he

sought to compel Thompson to purchase some hotel stock at a fixed price of $24,000. While Richards owned this stock, it having been given to him while he was acting as manager of the hotel property, he had no arrangement or agreement with Thompson whereby Thompson was in any sense obligated to purchase the stock at Richards' price, or at any other price. The appellant was given the benefit of all that he was entitled to under the law when the court instructed the jury that intent was an essential element of the crime charged and, as such, must be proved beyond reasonable doubt. In so far as rulings upon the rejection of evidence are embodied in this assignment of error, we find nothing that would indicate that appellant was deprived of presenting fairly and fully every material or relevant fact to the jury.

The next contention is error in permitting appellant's codefendant, Mills, to testify what he said to appellant when advising with him as to whether or not what was done could be done and escape criminal liability. Mills is a lawyer, and the main point is that his testimony was the unpermitted disclosure of a privileged communication between attorney and client. Mills has not yet been tried. So far as here disclosed, his part in the affair was to consult with Richards as to whether or not the contemplated act would be blackmail, assist in the preparation of the ninety-nine year lease, and to carry the demands, threats and libelous publication, consisting of forty-five typewritten pages roughly bound together, from Seattle to Thompson's home on Lake Crescent and deliver it in person. On his cross-examination appellant was asked in regard to the brochure prepared by him and delivered by Mills: "Had you been advised as to the nature of this, whether it was blackmail or not?" No objection was made to the question, and witness answered: "If I was to gain nothing which did not belong to me I understood it would not be blackmail." He further answered that this advice had been given him by Mills. The state called Mills in rebuttal

and, over objection of appellant, he testified: "I did advise under all the stuff that was submitted to me and under our statute, accompanied with threats especially under the libel section of the statute, that I thought it would constitute blackmail." The objections now urged are (1) that the inquiry upon cross-examination of appellant was upon a collateral matter and the plaintiff was bound by the answer of appellant in testifying to what Mills had told him. It was not a collateral matter. Whether or not the act of appellant was or was not covered by the statute on blackmail was the relevant inquiry of the trial, the purpose and the only purpose of the proceeding by the state. If appellant knew or had been advised of the legal consequence of his act such knowledge was material upon the intent with which the act was performed.

The second objection is that the conversation between Mills and appellant was a privileged communication between attorney and client. There was no privilege. The applicable rule is thus stated in 40 Cyc. 2373:

"The rule does not extend to communications respecting proposed infractions of the law, and so there is no privilege as to communications made in contemplation of the future commission of a crime, or perpetration of a fraud, in which, or in avoiding the consequences of which, the client asks the advice or assistance of the attorney. But communications in respect to an alleged crime or fraud, made after the act or transaction is finished, are privileged."

The same rule is recognized in 10 Ency. of Evidence 303. In *Hartness v. Brown*, 21 Wash. 655, 59 Pac. 491, the same contention is disposed of with this language:

"The rule, however, is well settled that communications made to counsel in contemplation of fraud or a criminal act are not privileged."

We offer no comment upon the part played by Mills in this transaction. It speaks for itself, and whoever reads this record may give it such name as he deems appropriate. The

only question we have to determine is the competency of Mills as a witness, and as the communication between appellant and Mills was in the undoubted contemplation of a criminal act, the rule of privilege does not apply.

The last assignment is directed to the instructions given, it being especially urged that the court improperly commented upon the facts. This contention is based upon certain holdings of the court embodied in the instructions, to the effect that the matter embraced within the brochure and the threat to publish was libelous; that the least which appellant demanded of Thompson was an instrument or writing intending to affect the title to property within the meaning of the statute, and that Thompson was under no obligation to execute the lease nor purchase the hotel stock as bearing upon the question as to whether or not the act charged against appellant, if committed, was, as defined by the statute, an attempt to extort or gain money or property. The interpretation to be given written instruments, whether the procedure is on the civil or criminal side of the court, is a matter of law for the court and not a matter of fact for the jury. It was not error for the court to tell the jury that the matter contained in the threatened publication was libelous, nor that the threat to publish was a threat to publish a libel. Neither was it error to comment upon the legal phase that Thompson was not bound in law to execute the lease nor purchase the stock. The court does not violate the inhibition against comment upon the facts in correctly defining a matter of law to the jury, nor in determining the issues to be submitted to the jury. All that the court said in effect to the jury was that the act of appellant, if committed, would be embraced within the definition of the statute, which is a question of law and not of fact. Neither is it a comment upon the facts for the court to state to the jury that there is no evidence to establish a legal duty, which was in effect what the court instructed the jury, when, as here, there is neither evidence nor contention that there was any such evidence. A defendant cannot be

prejudiced by a statement made by the court upon a matter of law against the truth of which there is no contention. *Drumheller v. American Surety Co.*, 30 Wash. 530, 71 Pac. 25; *State v. McPhail*, 39 Wash. 199, 81 Pac. 683; *State v. Gohl*, 46 Wash. 408, 90 Pac. 259; *State v. Newcomb*, 58 Wash. 414, 109 Pac. 355; *Farraris v. Slade Lumber Co.*, 88 Wash. 106, 152 Pac. 680.

Attention has been given to other assignments of error in which we find no merit.

The judgment is affirmed.

ELLIS, C. J., CHADWICK, MAIN, and PARKER, JJ., concur.