[No. 23016. Department Two. March 20, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM J. BURNS *et al.*, *Appellants*.[1]

*Henry Clay Agnew*, for appellants.

*Robert M. Burgunder, John J. Dunn*, and *Roscoe R. Fullerton*, for respondent.

*John F. Dore, amicus curiae.*

[1]Reported in 297 Pac. 212.

BEELER, J.—The appellants were convicted of the crime of extortion. They have appealed from the judgment and sentence on the verdict.

Omitting the formal parts, the information in substance charged: That the defendants on April 1, 1929, with intent to extort and gain the sum of five thousand dollars, did verbally threaten to accuse Leland Frease of the crime of grand larceny, and, by means of such threats, did extort and gain from him the sum of four thousand dollars.

The statute, § 2610, Rem. Comp. Stat., on which the information is based, provides:

"Every person, who, under circumstances not amounting to robbery, shall extort or gain any money, property or advantage, . . . by means of force or any threat, . . . to accuse any person of a crime . . . shall be guilty of extortion. . . ."

We epitomize the essential facts. Gearhart-Ericksen Company, a corporation, maintains and operates a country store at Bothell, Washington. From December 1, 1923, to April 1, 1929, the prosecuting witness, Frease, was in its employ, at times working in the store as a clerk, and at other times driving a delivery truck distributing its merchandise to its customers throughout the countryside. Shortly prior to April 1, 1929, the Gearhart-Ericksen Company employed appellants to investigate and determine whether money was being embezzled by any of its employees. At about one-thirty on the afternoon of April 1, 1929, appellants caused the prosecuting witness to be brought to a hotel room in Bothell, and there subjected him to a severe and rigid grilling, accusing him of embezzling $6,800 from his employer, and, as a result, Frease finally signed a written confession, wherein he admitted he had embezzled five thousand dollars. What

occurred in this room is best illustrated by a brief extract from the testimony of Frease:

"I am thirty-four years of age. I am a married man with two children. I have been married ten years. My family consists of my wife and two children. I have resided in Bothell for twenty years. From the first day of December, 1923, until April 1, 1929, I was employed by the Gearhart-Ericksen Company, a grocery store, in Bothell. I drove a delivery truck and clerked in the store. On the 1st day of April, Underhill came into the store and asked me to go across the street to a hotel and see a man named Burns. I went across to the hotel and went up to two rooms there. The defendant Burns was there. He had a brief case full of legal papers. He questioned me. He said to me: 'You know, Frease, I am accusing you of embezzling $6,800 of your firm's money.' I said, 'There is a terrible mistake somewhere.' He said, 'I have got evidence enough in this brief case to hang you, young man, and unless you do as I say you are headed to the penitentiary as an embezzler.' Q. Were you frightened by these statements that he had made? A. Absolutely. Q. As a matter of fact, had you embezzled any money from your company by whom you were employed? A. No, sir. Q. And you so told him at the time? A. I did. I signed a written confession that I had stolen $5,000 from my employer. Q. Why did you sign that? A. I thought of my wife and kiddies first, and our little home there. I thought of my aged father and mother. Then I next thought of my friends. After thinking over those things and considering my age, I figured that still I was young enough a man to go out and work hard enough so I could get back to where we were at the time this man made me sign that affidavit for $5,000. It was either penitentiary or death. I knew not which. I had always borne a good reputation at Bothell. This is a very important thing in a town like Bothell. Burns came right around the table, facing me, throwing back his coat. He said, 'Young man, do you know who you are doing business with?' I said I did not. He said, 'I am William J. Burns, national detective. I am

William J. Burnes,' and he shook his fist and like to scared me so bad that I didn't know whether I was going or coming or born yesterday or the day before. He said, 'You know Frease, I am accusing you of embezzling $6,800 of your firm's money.' 'Frease you can consider yourself under arrest as an embezzler and I am going to send you to the penitentiary from fourteen years to life.' I says, 'How can that be done?' He said, 'I was down to the city talking to the judge and talking this over with my judge, and he in turn has given me permission to go and do as I see fit in this case.' And he says 'Unless you do exactly as I say, it is the penitentiary for you, and it is fourteen years to life.' I said, 'Well this is a funny proposition. Let me out of here. I want to see Mr. Ericksen.' I said, 'Where is Mr. Ericksen? Bring him over.' Ericksen is the manager of the store. Burns said, 'You're out of Ericksen's hands. You are doing business with me. Unless you do exactly as I say you will never see the light of day.' I saw there was something radically wrong with the whole thing and pleaded with Burns to let me out of that room to get some of my friends or Ericksen himself and straighten this matter out. He refused to let me out. I requested time and time again to let me out to get someone but he would not. I believed he was the well known William J. Burns and I believed he had been down to see the judge. I left the hotel about four o'clock and went out with Underhill to my father's home to look for relatives to raise the money to pay back the money that I had confessed that I had stolen. I asked my brother-in-law if he could help me raise any money, that they had got me into a mess down at Bothell; and he said, 'How much do you have to have?' 'They are calling for a thousand dollars before dark.' We went back to the hotel room, and Mr. and Mrs. Stewart and my wife came in. They talked the matter over. Mrs. Stewart said, 'There is something funny about this.' Burnes gave me until the next day to raise the money, and agreed to throw off $1000. I gave him a check for $98 that night, and $600 which I had in the Bothell bank in cash, making a total of $700. The next day Mrs. Stewart and my wife and myself came

into the city to raise money. We talked to the manager of the bond department of the Dexter Horton National bank. I also talked to my brother-in-law in the Seattle Savings & Loan Association, and he raised about $400. We also went to the Mutual Savings & Loan Association and got some money there. We went out that night and gave Mr. Burns $3,300 for Mr. Ericksen. Mr. Ericksen came into the room at the time. I have never been convicted of a crime. I had never been in a court room prior to this time.''

Thus it will be seen that Frease on direct examination testified that he embezzled no money from his employer, and further testified he so advised appellants at the time they extracted the written confession from him. On cross-examination, appellants undertook to prove by documentary evidence (appellants' exhibits 1 and 2) that Frease had misappropriated money belonging to his employer which he had collected from the sale of merchandise, and for which he failed to account, which proof was rejected by the court, on the theory that it was immaterial whether or not Frease had embezzled money from his employer. Appellants also undertook to establish by Frease that he had stolen two sacks of corn from his employer's store, to which objection was made, and thereupon the court admonished the jury that he was admitting that particular testimony as affecting the credibility of the witness and for the purpose of impeachment only. These rulings by the trial court are assigned as error.

The question then is: Should the court have permitted appellants to cross-examine the prosecuting witness, Frease, whether he had embezzled money from his employer? Putting it more aptly: May one demand the return of money embezzled by another, and, if restitution be refused, threaten him with a criminal prosecution, without violating the extortion statute, so long as the demand is limited to the specific amount

embezzled? We think so. If A steals money from B, B may demand its return, and, if restitution be refused, B may threaten criminal prosecution, and, if he limits his demand to the specific amount embezzled, do no violence to the penal code. However, B may not demand of A more than is due him, and, if B by threats and duress obtains more than rightly belongs to him, he violates the statute. Nor may B, in his attempt to recover what is due him, by means of threats accuse A of the commission of another crime, or threaten to expose him to public ridicule. But so long as B limits his demand to the return of the specific article stolen, or to the exact amount of money embezzled, the statute is not violated. Therefore, the fact whether Frease embezzled money became material as bearing on the good faith—the intent—of appellants at the time they demanded the money of Frease; hence, the exhibits should have been received in evidence, and the court should not have restricted the jury, in its consideration of the testimony, merely as affecting the credibility of the witness Frease, or for impeachment purposes only.

The court throughout the trial consistently held it was immaterial whether Frease had stolen property or embezzled money, and further held it was immaterial whether appellants believed Frease guilty of theft at the time they demanded restitution from him, and, in accordance with this theory, submitted instruction No. 8 to the jury.

"The law does not permit the collection of money by the use of fear induced by means of threats to accuse the debtor of a crime. It is immaterial whether said Leland Frease stole any property from his employer or another, nor how much he stole or whether the defendants believed that Frease was guilty of the theft of money in an amount either less than, equal to or greater than any sum of money obtained by the de-

fendants from Frease, if in fact any money was obtained by them from him.''

Error is assigned on the giving of this instruction. We have held that one may threaten another, who has stolen goods or embezzled money, with civil action or criminal prosecution, if made in good faith, and thereafter successfully defend against an action brought by the wrongdoer to recover the goods or money paid by him under such circumstances. In the case of *Ingebrigt v. Seattle Taxicab & Transfer Co.,* 78 Wash. 433, 139 Pac. 188, the employee misappropriated money belonging to his employer, who later demanded its return, and threatened the employee with criminal prosecution if he refused. Being fearful of prosecution, restitution was made. Thereafter the employee brought suit to recover the money which he claimed was wrung from him through fear of prosecution and imprisonment. He testified that his employer threatened him by uttering the following:

''. . . that it wouldn't take Prosecuting Attorney Murphy but a short time to send me to Walla Walla;' that 'It would be nice for you to lay up in jail tonight;' that 'It wouldn't be very nice for you to lay upon the hill in jail tonight,' and that 'You better settle up. Give us the truck and square up'.''

The question presented was whether the employee had paid the money while under duress. We said:

''Do these facts constitute duress? We think not. Under the appellant's testimony, he had unlawfully appropriated money which belong to respondent. The respondent had a right to say to him that, if he did not settle, it would commence a civil action. It also had a right to point out to him that he was subject to a criminal prosecution. Under his own testimony, the good faith of the charge that he was subject to criminal prosecution cannot be questioned. It is not duress for one who in good faith believes that he has been wronged to threaten the wrongdoer with a civil suit;

*and if the wrong includes a violation of the criminal
law, it is not duress to threaten him with a criminal
prosecution."* (Italics ours.)

In *Mann v. State*, 47 Ohio St. 556, 26 N. E. 226, 11
L. R. A. 656, the defendant was charged with having
unlawfully threatened and accused the prosecuting wit-
ness of having killed two colts by administering poison,
with the intent to extort and gain from him certain
chattels and money. The trial court instructed the
jury that it was immaterial whether the accusation
made against the prosecuting witness was true or
false. The defendant was convicted and appealed.
The cause was reversed, the court holding:

"Whether the accusation against Brigham and his
wife was true or false was not, in our judgment, im-
material as affecting the guilt or innocence of the plain-
tiff in error. In the absence of any intent to extort or
gain, he would not be guilty of the offense charged.
It is conceded that the animals poisoned and killed
were his property, and, if the minds of the jury had
not been diverted from a consideration of the evi-
dence—as immaterial—which tended to prove that the
parties accused were guilty of the crime of adminis-
tering the poison, it might have been made manifest to
the jury, that the motive of the defendant was not to
extort or gain, but only to obtain an equitable satis-
faction for the loss of the property. . . . the truth
of the accusation may become material, not as in itself
an adequate defense, but as having a tendency to estab-
lish that the intent of the defendant was not to extort,
but only to secure a reasonable compensation for prop-
erty destroyed, or the payment of a just debt."

See, also, *State v. Hammond*, 80 Ind. 80; *State v.
Ricks*, 108 Miss. 7, 66 South. 281; *Regina v. Johnson*,
14 U. C. Q. B. 569; *People v. Griffin*, 2 Barb. (N. Y.)
427.

From the testimony of the prosecuting witness, the
jury could readily have found two vital facts: First,

that Frease had been a faithful, industrious, and honest employee, working steadily to support himself and family; second, that he was not an embezzler. In truth, Frease stood before the jury as an object of pity, who had been victimized at the hands of those tutored in the art of intrigue. Therefore, in furtherance of justice, it became important to determine whether Frease had or had not embezzled money from his employer.

If Frease embezzled no money, then appellants are guilty of extortion of the most dire type. If Frease embezzled money, but if the amount was less than that which appellants undertook to extract from him, appellants violated the extortion statute. If Frease embezzled the money which appellants undertook to collect from him, then the means they adopted were justifiable to induce him to make restitution, and proof of theft became material as bearing on the question of appellants' good faith—intent—purpose—object and motive, at the time they demanded the money from Frease,—that is, whether the demand was with the intent to feloniously, illegally and corruptly extort money from Frease, or whether it was with the intent and purpose to compel Frease to repay the money he had embezzled from his employer. Therefore, instruction No. 8, *supra,* as given by the court, is not a correct statement of the law.

"In criminal prosecutions for extortion at common law and also under the statutes of some states the mala fides of the act is the very essence of the offense, and the money or other thing of value must have been wilfully and corruptly demanded and received, and consequently if a fee is honestly demanded and received under a mistake as to legal rights, the guilt of extortion will not be incurred." 8 R. C. L., p. 295, § 317.

But, respondent contends, it is wholly immaterial whether Frease embezzled money from his employer, and whether appellants, at the time they interviewed Frease and procured from him the written confession, believed him guilty of theft, and cite in support thereof the following:

*State v. Richards,* 97 Wash. 587, 167 Pac. 47; *State v. Debolt,* 104 Iowa 105, 73 N. W. 499; *Lee v. State,* 16 Ariz. 291, 145 Pac. 244; *People v. Eichler,* 75 Hun 26, 26 N. Y. Supp. 998; *People v. Beggs,* 178 Cal. 79, 172 Pac. 152; *Rex v. Odell,* 22 Can. Cr. Cas. 39; *In re Sherin,* 27 S. D. 232, 130 N. W. 761; *People v. Choynski,* 95 Cal. 640, 30 Pac. 791; *People v. Wickes,* 112 App. Div. 39, 98 N. Y. Supp. 163; *Kessler v. State,* 50 Ind. 229; *State v. McDonald,* 192 Wis. 612, 213 N. W. 295.

We have examined these authorities and have no quarrel with the principles therein announced, but the facts in the cases relied on by respondent have no possible application to the question here under consideration. In some, the accused sought to extort money far in excess of the amount embezzled. In others, the accused sought to extort money by threatening to expose the prosecuting witness to public ridicule. In no case cited by respondent did the accused limit his demand to the return of money equal in amount to that embezzled, or to the specific property stolen.

In the *Richards* case, *supra,* the defendant, with intent to extort twenty-four thousand dollars from one Thompson, sought to compel him to execute a 99-year lease on certain real estate and to sign other valuable papers under threats of accusing him of assault, blackmail, seduction, larceny, and other crimes, and, further, threatened to publish certain documents in which Thompson was accused of these crimes in detail. In the *Debolt* case, *supra,* the defendant and one Smith, with intent to extort money, threatened to accuse the

prosecuting witness of sodomy. In the *Lee* case, *supra,* the defendant compelled the prosecuting witness, at the point of a gun, to kill a cow, the property of another, which the defendant and his confederates had tied to a tree, and then threatened to accuse him of larceny unless he paid two thousand dollars. In the *Eichler* case, *supra,* the defendant sent a letter threatening to accuse the prosecuting witness of a crime for the purpose of extorting money, to which he had no legal claim or right whatsoever.

Respondent relies in particular on the case of *People v. Beggs, supra,* from which instruction No. 8 was adopted substantially verbatim and submitted to the jury. There an employee had stolen from his employer, the proprietor of a store, certain articles, including two suits of clothes, the value of all the stolen merchandise not exceeding fifty dollars. The employee was incarcerated and remained in jail over night. The following morning, the employer, accompanied by his attorney, Beggs, went to the police station, and there Beggs interviewed the defendant and learned that he had two thousand five hundred dollars on deposit in two banks. Thereupon Beggs, accompanied by a police officer, took the employee to his private office and impressed upon him the gravity of his offense and said to him:

"You can be sent to San Quentin, and unless you immediately pay two thousand dollars in settlement you will be sent to prison for seven to ten years."

As a result, the employee paid two thousand dollars, eleven hundred of which the attorney kept. The mere recitation of the facts reveal that Beggs was guilty of the most dire extortion. The demand was not limited to the return of the articles purloined or stolen by the faithless employee. Beggs extorted $1,950 to which he had no legal claim or right. Further analysis of the

remaining cases is unnecessary, because they shed no light on the question here under consideration.

For the reasons assigned, the case is reversed and the cause remanded for a new trial.

BEALS, MILLARD, and FULLERTON, JJ., concur.

TOLMAN, C. J., concurs in the result.

## ON REHEARING.

### [En Banc. July 3, 1931.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adhere to the Department opinion heretofore filed herein. The judgment of the trial court is therefore reversed, and the cause remanded for a new trial.

BEALS, J. (concurring)—After careful consideration, I desire to state briefly my reasons for concurring in the decision of this court that the judgment in the above entitled cause should be reversed.

The pertinent portion of Rem. Comp. Stat., § 2610, reads as follows:

"Every person who . . . shall extort or gain any money, property or advantage . . . by means of . . . any threat, . . .

"(1)   To accuse any person of a crime; . . .

"Shall be guilty of extortion and shall be punished by imprisonment in the state penitentiary for not more than five years."

Under the foregoing section, the crime of extortion is a felony punishable only by imprisonment in the state penitentiary. It follows that the statutory crime of extortion is a serious offense meriting condign punishment.

The crime of "oppression under color of office" is by the statute (§ 2611) made either a gross misdemeanor or a misdemeanor, and the crime "extortion by pub-

lic officer'' (§ 2612) is made a misdemeanor. By § 2613, the crime of ''blackmail'' is defined and made punishable by imprisonment in the state penitentiary for not more than five years, or by imprisonment in the county jail for not more than one year, or by a fine of not more than one thousand dollars, or by both fine and imprisonment. By § 2614, the crime of ''coercion'' is defined and made a misdemeanor. It is to be noted that accomplishment is an element of the crime of extortion, an unsuccessful attempt not falling within the definition.

It is apparent from comparison of the foregoing sections that in the opinion of the legislature the crime of extortion, of all the crimes hereinabove referred to, merited the most severe punishment. This becomes important in determining just what acts the legislature intended to include within its definition of the crime with which we are here concerned.

''The ordinary meaning of the word 'extortion' is the taking or obtaining of anything from another by means of illegal compulsion or oppressive exaction.'' 25 C. J., p. 233, § 1.

The word ''gain,'' which is used in the statute above quoted in connection with the word ''extort,'' is, of course, in its general meaning, of much broader significance, but, in my opinion, does not enlarge the scope of the statute, and must be construed as synonymous with the word ''extort.''

Appellants were charged with the crime of extortion, the information alleging that they, with intent to extort and gain the sum of five thousand dollars, did verbally threaten to accuse Leland Frease of the crime of grand larceny, and that they, by means of such threats, did extort and gain from Frease the sum of four thousand dollars.

At common law and under statutes declaratory thereof, in order to constitute extortion, the act must have been committed with a corrupt intent. 25 C. J., p. 238, § 15. In this authority, attention is called to the fact that it has been held that the fact that money was not taken for an officer's own use might be of evidential value as showing the absence of intent.

It seems to me clear that *mala fides* (either in word or act) is one of the bases of the crime of extortion, and that, in the absence of this element, the offense is not committed. In this connection, the following authorities, in addition to those referred to by the majority, are instructive.

The supreme court of Indiana, in the case of *McMillen v. State,* 60 Ind. 216, held that, in a prosecution for extortion, the defendant being charged with accusing one of having had sexual intercourse with the defendant's wife, and having by such accusation induced the person threatened to part with money and property against his will, the jury should have been instructed that, if they believed that the accusation was made in good faith by an injured party to obtain satisfaction for an injury really believed to have been inflicted, they should find that the accusation was not made for the purpose of extortion, and that they might find for for the defendant.

In the case of *Commonwealth v. Coolidge,* 128 Mass. 55, the court approved an instruction to the effect that a threat made by one whose goods had been stolen, to the effect that he would prosecute the suspect under certain circumstances, could not be considered as made with malice and intent to extort property unless there were other proofs of malice and intended extortion.

In the case last cited, the court quoted from the earlier case of *Commonwealth v. Jones,* 121 Mass. 57, 23 Am. Rep. 257, a prosecution for malicious threats

to accuse one of a crime with the intent of extorting money, in which the court said:

"The evidence offered as to the truth of the accusation against Robinson might have had an important bearing upon the question of the defendant's intent, and should have been admitted. If Robinson had in fact made such an assault upon the defendant's wife, the defendant might lawfully demand reparation. If the wrong which he offered to prove had in fact been committed, the demand which the defendant made for payment may have been without the intent to extort money, necessary to constitute the crime alleged in the indictment."

See, also, *State v. Bruce,* 24 Me. 71.

In the case of *Cohen v. State,* 37 Tex. Cr. 118, 38 S. W. 1005, the court of criminal appeals of Texas, under a statute similar in principle to our own, held an indictment charging extortion defective for reasons not important here. In the course of its opinion, the court quoted from the Century Dictionary the definition of the word "extort," and concluded that, in defining the offense under which the defendant was being prosecuted, the statute used the word "extort" in its broader sense, and not as synonymous with the word "extortion" which, under the common law and according to law dictionaries, is applied to officers who, by color of office, etc., unlawfully take money. The court said that the statute should not be construed as applicable only to cases where no debt existed between the parties, but that, on the contrary, a party might be guilty of the offense of attempting to extort money, although the victim might be justly indebted to the offender.

In the course of its opinion, the court quotes with approval from the case of *Mann v. State,* 47 Ohio State 556 (the quotation being incorrectly attributed to the opinion in the case of *Elliott v. State,* 36 Ohio State 318) to the effect that the doctrine that one

might be guilty of extortion in threatening one who was justly indebted to him is not inconsistent with the position that the truth of the accusation may become material, not as being in itself a complete defense, but as having a tendency to establish that the intent of the defendant was not to extort, but only to secure reasonable compensation (I would add in a reasonable manner) for property taken, or the payment of a just debt. With this doctrine, I am in accord. The appellant had written a letter which, it was contended, rendered him guilty of extortion. In the course of its opinion, the court says:

"In other words, the question for the jury to determine is whether or not the letter threatening a criminal prosecution was sent with the view of extorting money from the prosecutor. If the money was not due and owing at all, the sending of such a letter would be absolute proof of extortion; but, if a debt was due and owing by the prosecutor, the letter itself, under the environments under which it may have been written, might not have been written with the view of extorting money from the prosecutor—that is, by threatening him by letter with a criminal prosecution in order to obtain the money. And we believe in this case that the circumstances connected with sending the letter, and the truth of the matters therein contained, should have been admitted by the court, in order that the jury might correctly pass upon the question as to whether or not said letter was sent and delivered with the view of extorting money from the prosecutor."

In the case at bar, as stated in the opinion of the majority, the trial court permitted appellants to cross-examine respondent's witness Frease as to whether or not he had stolen certain property from his employer, only for the purpose of affecting the credibility of the witness and by way of impeachment, and instructed the jury that it was immaterial whether or not Frease

had in fact stolen any property from his employer, or whether or not appellants believed that Frease was guilty of any such theft.

In my opinion, the question of the good or bad faith of appellants was important, as bearing upon their guilt or innocence of the crime with which they stood charged, and that, therefore, the court should have permitted them to introduce testimony to the effect that Frease had been guilty of stealing from his employer, and that they knew this. It is true that appellants might be guilty of the crime of extortion, even though Frease had stolen from his employer and appellants knew it, but nevertheless, the evidence above referred to was admissible, as bearing upon the guilt or innocence of appellants.

As to whether or not the law was, in all particulars, correctly expounded in the authorities above referred to, I express no opinion, but the cases throw some light upon the principles which seem to me to be here controlling.

It is inconceivable to me that the legislature could have intended to make one guilty of the crime of extortion and subject to the very severe penalties provided for in the statute, who does no more than demand return of his own property stolen from him, or the value thereof, under bare threat of the institution of a criminal proceeding against the thief. Such a threat may or may not amount to extortion—that is for the jury to determine; but, in my opinion, the trial court erred in rejecting evidence as to the actual facts concerning Frease's conduct, and in instructing the jury that it was immaterial whether or not Frease had stolen any property, or that appellants believed that Frease was guilty of such theft. The jury were entitled to know all the circumstances in connection with

this phase of the case and consider them in determining whether or not appellants were guilty of the crime with which they stood charged.

TOLMAN, C. J., concurs with BEALS, J.