**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 24, 2021**

# In the Court of Appeals of Georgia

A20A1970. NAFFIS v. TZAVARAS.

GOBEIL, Judge.

Darius Naffis, M.D., appeals from the trial court's order granting George Tzavaras's motion for partial summary judgment, in Naffis's lawsuit seeking to collect damages from Tzavaras based on the terms of a promissory note representing a debt between the parties.[1] The trial court ultimately found that the consideration for the promissory note was at least partially illegal, based on Naffis's alleged extortion, and thus the note was unenforceable. On appeal, Naffis argues that the trial court erred in granting summary judgment to Tzavaras because genuine issues of material fact remain concerning (1) whether extortion actually occurred in the execution of the

---

[1] Naffis amended his complaint to add claims against Tzavaras for fraud, misrepresentation, and defalcation. Those claims were not the subject of Tzavaras's motion for summary judgment and remain pending in the trial court.

promissory note and, if so, (2) whether an exception applied to render Naffis's conduct legal. For the reasons set forth below, we reverse the trial court's judgment.

On appeal, we review the trial court's summary judgment ruling de novo and "construe the evidence and all reasonable inferences therefrom in the light most favorable to [Naffis as] . . . the nonmovant." *Hindmon v. Virgil's Food Mart, Inc.*, 252 Ga. App. 732, 732 (556 SE2d 135) (2001). Summary judgment is appropriate only if no genuine issues of material fact remain concerning the nonmovant's claims. See id. at 732-733.

So viewed, the record shows that Tzavaras was married to Naffis's daughter from November 2004 until February 2019. During the marriage, Naffis entrusted Tzavaras with at least $1.5 million to invest. Naffis expected the arrangement to produce "income and modest growth" for himself, as well as provide Tzavaras with a source of income, in the form of commissions, as a way to support Naffis's daughter and grandchildren. Naffis received "some distributions" from Tzavaras, but never received tax forms to document any supposed gains from the investments despite repeated requests.

In August 2014, Tzavaras and Naffis's daughter moved to Atlanta. Tzavaras wished to purchase a house in Fulton County, and asked Naffis to buy the house and

later sell it to Tzavaras after Tzavaras was able to arrange financing. Naffis spent $310,000 on the house, and another $60,000-$70,000 in repairs and improvements at Tzavaras's request. Tzavaras never purchased the house from Naffis as promised.

In October 2016, following Naffis's "growing suspicions" about Tzavaras's behavior with respect to Naffis's money, Tzavaras voluntarily delivered to Naffis an "Acknowledgment of Debt" document, confirming that Tzavaras was indebted to Naffis in the amount of $1,934,000. Tzavaras acknowledged that Naffis "shall be authorized to enter an uncontested, default judgment" against him, should the debt not be paid in full by May 1, 2017.

Naffis delivered the debt acknowledgment to his attorney, who drafted a promissory note (the "Note") formally embodying Tzavaras's obligation. The Note, which was signed by Tzavaras in the presence of an attorney on January 5, 2017, repeats that Tzavaras had agreed to pay Naffis the principal balance of $1,934,000, with six and one half percent interest per annum, until maturity on May 1, 2017, and then twelve percent interest per annum thereafter. According to Naffis, as of the timing of the filing of the lawsuit, Tzavaras had not paid any of the debt owed.

In December 2018, Naffis filed suit against Tzavaras on the Note. The complaint explains the existence of the Note, then states:

3

Among other things, the consideration for the Note was the forbearance of Dr. Naffis in filing criminal charges, and initiating a civil suit against Tzavaras, arising out of Tzavaras'[s] embezzlement, misappropriation, fraud and defalcation in receiving and misusing or misappropriating funds for Dr. Naffis which Tzavaras as a fiduciary was entrusted to invest for Dr. Naffis.

The complaint alleges that Tzavaras embezzled or misappropriated the money entrusted to him and that Tzavaras failed to return to Naffis "any of the funds entrusted to him, despite numerous requests by Dr. Naffis." Based on Tzavaras's failure to pay the debt by May 1, 2017, Naffis calculated that, in addition to the principal amount, Tzavaras owed him $391,489.41 in interest as of the day of filing the complaint, and $635.84 per day thereafter based on the 12 percent interest rate set froth in the promissory note. Naffis also sought attorney fees as laid out in the Note, and pursuant to OCGA § 13-6-11.

Tzavaras answered the complaint, asserting among other things that the consideration for the Note was illegal, in that Naffis threatened to criminally prosecute Tzavaras if he refused to sign the Note. Such threat, Tzavaras asserted, amounted to extortion, which would render the Note unenforceable. In his answer, Tzavaras set forth his own version of events, claiming that he ran a successful

4

investment coaching business, yet had modest personal success in investing. Tzavaras asserted that he warned Naffis of the risks of investing, yet Naffis was insistent. Tzavaras stated that he generated approximately $230,000 for Naffis in the first several years of the arrangement, but he then began to lose money. He claimed that Naffis threatened to file criminal charges against him, and has defamed him in a way that was damaging to Tzavaras's business. Tzavaras filed a counterclaim against Naffis alleging extortion and defamation, which he later withdrew without prejudice.

The parties engaged in discovery, and, in May 2019, Tzavaras filed a motion for partial summary judgment. As in his answer, Tzavaras argued that the consideration for the Note was based on extortion, and thus the Note was unenforceable. Naffis responded in June 2019, arguing Tzavaras delivered the Acknowledgment of Debt to him voluntarily and without threat. Additionally, the Georgia statute governing extortion, OCGA § 16-8-16 (c), provides an exception if the party agreeing to forgo criminal prosecution in exchange for a promise to pay money has an honest belief that the money is owed to him as restitution for harm done. Because Naffis has an honest claim[2] to the principal balance set forth in the

---

[2] In addition to stating his argument in his filings, Naffis swore via affidavit that he has "an earnest and honest, unwavering belief" that he "was and [is] entitled to be paid the debt embodied and evidenced by the Note."

5

Note, he argued, the consideration for the Note, which included a promise to forgo criminal prosecution of Tzavaras, was not illegal and the Note was enforceable.

On July 30, 2019, over a month after filing his summary judgment motion, Tzavaras filed a "Notice of Filing Affidavit of Cary Ichter." The attached affidavit stated that Ichter was Tzavaras's attorney, and he had received two documents from Naffis in discovery that he wished to submit. The affidavit did not attempt to explain any other context for the documents. The first document purports to be a business document from "Tzar Capital Inc." and shows that on October 15, 2010, Tzavaras and Naffis executed an "Addendum to the Agreement for the Management of Capital on behalf of Darius Naffis M.D. dated 3/20/10." The document then states that $22,785.52 in distributions have been paid through October 15, 2010; new capital in the amount of $1,200,000 was being invested; and the "Total Capital Invested" was $1,500,000. This document is signed by Tzavaras and Naffis. The second document has no date and is titled simply "Distribution(s)." It shows a list of figures purporting to be distributions on various dates between October 15, 2010, and June 10, 2012. There are handwritten notes adding up the distributions for each year, totaling $237,287.14.

On February 3, 2020, Tzavaras filed a reply in support of his motion for summary judgment. Relying on the two documents described above that were attached to Ichter's affidavit, and on Naffis's own affidavit, Tzavaras argued that Naffis could not have an honest claim to the $1,934,000 principal set forth in the Note because he had admitted to receiving some of the initial $1.5 million investment back, and the distribution document showed that the amount of distributions totaled more than $230,000. Additionally, the principal amount of the Note included more than $350,000 owed to Naffis based on his purchase of the Fulton County house for Tzavaras, yet Naffis still owned the house and could sell it at any time to recoup the money spent. Thus, Naffis could not have an honest claim to both title in the house and money from Tzavaras for repayment of the house. Accordingly, Tzavaras argued that no reasonable factfinder could conclude that Naffis honestly believed the Note was restitution or indemnification, rendering the consideration illegal.

The hearing took place four days later on February 7, 2020. Naffis objected to the Ichter affidavit and the inclusion of the documents attached thereto in the court's consideration of Tzavaras's motion for summary judgment, because Tzavaras's had failed to attach the affidavit to the motion for summary judgement as required by

OCGA § 9-11-6 (d). Additionally, although Tzavaras could have asked the court to consider a late-filed affidavit, he had not done so.

After taking the issues under consideration, the trial court issued an order granting summary judgment to Tzavaras. The court ultimately concluded that the consideration for the Note was based on extortion, as Naffis admitted in the complaint that the consideration for the Note included a promise to forgo criminal prosecution of Tzavaras. Additionally, the trial court concluded that no reasonable factfinder could conclude that Naffis had an honest, good faith claim to all of the debt laid out in the Note, so the exception argued by Naffis did not apply. The court pointed to three categories of damages sought by Naffis which exceeded his actual damages.

First, the court found that Naffis's claim to the approximately $370,000 to $380,000 spent to purchase and renovate the Fulton house in his own name exceeded Naffis's actual damages because Naffis still owned title to the house, and he could not claim entitlement to both the title and the money used to purchase it. Second, the court found that Tzavaras had distributed "certain profits" to Naffis out of the $1.5 million investment, which, according to Naffis's own records provided to Tzavaras

in discovery, totaled $237,287.14.[3] Thus, Naffis could not honestly claim entitlement to the full $1.5 million investment when he had received some of the money back from Tzavaras. Third, the court found that the amount due in the Note included at least $662,993.09 in interest, when Naffis was not entitled to a guaranteed return on his investment at all, much less at 12 percent. Additionally, the court found that the loss of interest was not an out-of-pocket loss. Accordingly, the court ruled that there were no genuine issues of material fact that Naffis obtained the Note via extortion, and its consideration was at least partly illegal, rendering it unenforceable. This appeal followed.

1. On appeal, Naffis asserts that the trial court drew improper inferences from the evidence when it found that the consideration for the Note was illegal because it was based on Naffis's alleged extortion of Tzavaras in its execution. Naffis argues that there is no evidence that he made any threats towards Tzavaras to get him to draft the Acknowledgment of Debt or execute the Note. We find that a question of material fact remains.

---

[3] The trial court used its "broad discretion" to consider the late-filed Ichter affidavit in making this finding, stating Naffis "can hardly claim surprise from his own business records . . . ."

Georgia law states that if the consideration for a promise "is illegal in whole or in part, the whole promise fails." OCGA § 13-3-45; *Starr v. Robinson*, 181 Ga. App. 9, 10 (351 SE2d 238) (1986). "A person commits the offense of theft by extortion when he unlawfully obtains property of or from another person by threatening to . . . [a]ccuse anyone of a criminal offense[.]" OCGA § 16-8-16 (a) (2). The trial court found that the complaint, which stated that the consideration for the Note included "the forbearance of Dr. Naffis in filing criminal charges" against Tzavaras for alleged criminal behavior, was a conclusive admission by Naffis of extortion. Thus, because the Note's consideration was based at least in part on illegal activity, the trial court concluded that the Note was unenforceable. However, we agree with Naffis that, in order to reach this conclusion, the court made a finding of fact that Naffis threatened Tzavaras with criminal prosecution, where such a fact was disputed in the limited record before the trial court.

According to Naffis's affidavit, Tzavaras delivered the Acknowledgment of Debt to him unsolicited, in response to Naffis's "growing suspicions" about Tzavaras's use of the investment funds. Naffis then had the Note drafted by an attorney, in which Tzavares "[f]or value received" promised to pay Naffis the principal and interest as outlined above. According to Naffis, his attorney sent the

10

Note to Tzavaras by mail, and there were no further discussions before Tzavaras executed the Note. Indeed, in neither the Acknowledgment of Debt nor the Note are there mentions of any threats or promises made by Naffis in exchange for Tzavaras's confirmation of the debt and promise to repay. In the complaint, Naffis stated that consideration for the Note included a promise to forgo pursing Tzavaras criminally or civilly for certain activities, in exchange for Tzavaras agreeing to pay back the money. In Naffis's version of events, even if Naffis admitted a promise to forgo criminal prosecution, no threats were made in the exchange.

By contrast, according to Tzavaras, who did not file an affidavit, but who made factual allegations in his counterclaim that was later dismissed, Naffis did threaten him, including a specific threat to file criminal charges against him if Tzavaras did not sign the Note. Based on these competing allegations, there is a disputed question of fact as to whether Naffis threatened Tzavaras in order to get Tzavaras to sign the Note, or whether Tzavaras voluntarily offered the Acknowledgment of Debt and Note as a way to allay Naffis's concerns.

At the summary judgment stage, the trial court cannot weigh the evidence or the credibility of the parties. *Dover v. Mathis*, 249 Ga. App. 753, 754 (549 SE2d 541) (2001). "Where the facts as testified to by the parties create a conflict in the evidence

11

as to a material issue, summary judgment is precluded." *Dills v. Bohannon*, 208 Ga. App. 531, 533 (1) (431 SE2d 123) (1993). Naffis, as the nonmovant is to be "given the benefit of all reasonable doubts in determining whether a genuine issue exists. The evidence must be construed most favorably to [Naffis], and the trial court must give him the benefit of all favorable inferences that may be drawn from the evidence." *Smith v. Sandersville Production Credit Assn.*, 229 Ga. 65, 66 (189 SE2d 432) (1972). Accordingly, we find that the trial court improperly weighed the evidence and/or the credibility of the parties and failed to give Naffis the benefit of the doubt in determining that no genuine issues existed, and we reverse the judgment of the trial court for this reason.

2. Naffis also asserts that the trial court "erroneously usurped the role of the jury" in finding that he did not have an honest claim to the debt reflected in the Note. We agree.

Even assuming for purposes of this Division that Naffis did threaten Tzavaras with criminal prosecution in order to get Tzavaras to sign the Note, there is an affirmative defense to the crime of extortion where the property demanded "was honestly claimed as restitution or indemnification for harm done in the circumstance

12

to which such accusation, exposure, legal action, or other official action relates[.]" OCGA § 16-8-16 (c).

The trial court reasoned that no factfinder could find that Naffis honestly claimed as restitution the full amount of the debt stated in the Note because: (1) he received some money back from Tzavaras in the form of distributions; (2) he could not honestly claim entitlement to the full amount spent on the Fulton County home when he still held title to the home; and (3) the interest contemplated in the Note was neither guaranteed to him, nor was actually taken from him. Thus, the amount of restitution Naffis honestly could claim a right to based on Tvazaras's alleged wrongdoing was much lower than the amount Naffis demanded of Tzavaras in the Note. See OCGA § 17-14-9 ("The amount of restitution ordered shall not exceed the victim's damages.") Accordingly, the trial court reasoned that any reasonable factfinder would find that Naffis committed extortion by demanding more than he was owed in exchange for promising not to file criminal charges against Tzavaras.

At the outset, we note the limited precedent on the application of OCGA § 16-8-16 (c) and what constitutes an honest claim that would excuse a threat to criminally prosecute a person one believed had stolen from them, making the issue before us one of first impression. Naffis argues that we should apply a subjective standard to his

13

honest claim, which would be a fact for the jury to decide. Tzavaras suggests that we look to the application of OCGA § 16-8-10 (2) for guidance. OCGA § 16-8-10 (2) provides an affirmative defense to various criminal theft statutes not involving the use of force, where the accused "[a]cted under an honest claim of right to the property or service involved[.]" In applying OCGA § 16-8-10 (2), the Supreme Court has found at least some objective component to an accused's "honest claim" defense. See *Dorsey v. State*, 279 Ga. 534, 543 (4) (b) (615 SE2d 512) (2005) (defendant former sheriff was accused of theft based on routine use of county property for his own convenience and profit; Supreme Court held that accused could not have had an honest claim of right to the county's property and trial court was not required to instruct jury on affirmative defense); *Wideman v. State*, 222 Ga. App. 733, 733-734 (2) (476 SE2d 49) (1996) (no "honest claim of right" jury instruction required for accused who stole one brand of television, when he claimed that victim owed him a different brand of television). Therefore, to the extent there is some objective component to an "honest claim," application of OCGA § 16-8-10 (2) suggests that a trial court can make this finding in some instances.

In other situations, we have concluded that an incorrect belief in entitlement to certain goods requires a jury finding as to the accused's honest claim to the

14

property. See *Foskey v. State*, 125 Ga. App. 672, 674 (3) (188 SE2d 825) (1972) (where accused incorrectly but subjectively believed that he was allowed to purchase goods off wholesale grocery truck for a reduced price, trial court was required to instruct jury on honest claim defense). In the only Georgia case that cites OCGA § 16-8-16 (c), the Supreme Court in dicta explained that threatening litigation in exchange for obtaining property from another may serve as the basis for an extortion charge, but noted that a defendant would have an opportunity to defend such a charge by arguing to a jury that he had an honest claim to the property in question. See *State v. Cohen*, 302 Ga. 616, 624 n.9 (807 SE2d 861) (2017). These cases suggest that a defendant's honest claim is a question for the jury after a trial, as opposed to a judge on summary judgment.[4]

We find the instant case to be closer to the latter examples than the former. A sheriff routinely using county resources for his own profit and benefit, and a thief

---

[4] In its order granting summary judgment, the trial court relied on what it found to be persuasive authority from Washington State, *State v. Burns*, 161 Wash. 362 (297 P 212) (1931), which held that one who demands the return of more than the specific amount stolen from him is guilty of extortion. Id. at 366-368. However, even in *Burns*, it was ultimately found to be a jury question as to whether the accused had or had not extorted his employee based on the accused's belief that the employee had embezzled money. Id. at 367, 370 (holding that the jury should have been allowed to consider evidence of employee's potential embezzlement in order to determine accused's guilt for extortion).

15

stealing a television that could not be the one owed to him, are much more clear cut examples of an objectively non-honest claim than the one presented in the instant case. Whether a reasonable person in Naffis's shoes would have believed he was entitled to the damages he claimed is a closer question, especially at the summary judgment stage where we are required to construe the record in his favor.

Indeed, there was some evidence in the limited record before the trial court to support his honest claim to the debt laid out in the Note. First, Naffis averred that Tzavaras delivered to him unsolicited, without threats or demands, the Acknowledgment of Debt . The amount of debt memorialized in the Note is the same as the amount laid out in the Acknowledgment of Debt. Second, there is Naffis's affidavit, in which he claims an honest entitlement to the debt acknowledged in the Note.

There is also some evidence in the record that may cast doubt on the amount Tzavaras actually owed to Naffis, or on the good faith nature of Naffis's belief that he was entitled to the full amount laid out in the Note. The $1.5 million investment plus the $380,000 to $390,000 spent on the Fulton County house does not equal the $1.934,000 laid out in the Note, and Naffis himself acknowledged that he received some money from Tzavaras. Further, there is also the question of how much interest

16

Naffis may honestly claim a right to, when investments are by their nature not guaranteed to return a profit.

At this stage of the proceeding, we conclude that this conflicting evidence raises a genuine question of material fact regarding Naffis's honest claim to the debt laid out in the Note. And, as discussed above, disputed facts preclude summary judgment. *Dills*, 208 Ga. App. at 533 (1). Therefore, for this additional reason, we reverse the trial court's judgment granting partial summary judgment to Tzavaras.[5]

*Judgment reversed. Barnes, P. J., and Pipkin, J., concur.*

---

[5] In his brief on appeal, Naffis also raised as error the trial court's consideration of the Ichter Affidavit and accompanying documents in deciding Tzavaras's motion for summary judgment. Because we have reversed the trial court's judgment for other reasons and without consideration of these documents, we need not reach this issue.